JUNE TERM, 1870. 327

Whitney and others vs. The Chicago and Northwestern Railway Company.

WHITNEY and others vs. THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

PLEADING AND PRACTICE: (1, 2.) *Causes of action stated variously to meet possible proofs, compelling plaintiff to elect.* (4, 5.) *In what form negligence must be averred to admit certain evidence.—How the objection must be taken.*

COMMON CARRIER—RAILROAD—NEGLIGENCE—EVIDENCE: (3, 6–9.) *Duty of railway carrier as to storage of consignee's property.—Evidence of negligence.*

DAMAGES: (10.) *Interest.*

1. Where plaintiff cannot know before the evidence is all in, the precise nature and limits of defendant's liability to him, he may state his cause of action variously in different counts of the complaint, and should not be compelled to elect upon which he will proceed.

2. Thus, where plaintiffs had shipped for themselves two lots of goods at different times over defendant's road to Chicago, and had never received them at that place, and defendant claimed that they were destroyed by fire in its Chicago depot, after its liability as carrier had ceased, counts charging defendant in each case with default as a carrier, and others charging in each case loss through its negligence as warehouseman, were admissible, as they did not tend to mislead defendant in making its defense.

3. It is the duty of a railroad company to provide convenient and reasonably safe depots where its freight can be stored; and evidence as to the character and location of its depot, for the purpose of showing negligence in that respect, in consequence of which the goods were destroyed by fire, is admissible in such a case, where a proper foundation for it has been laid in the complaint. So also evidence as to the competency of defendant's servants, its facilities for putting out fires, and for saving property in case of a fire, etc., etc.

4. Whether a general averment that the goods were destroyed while in defendant's custody, through the failure of its agents and servants to exercise ordinary care in protecting the same, is sufficient to admit such evidence, is not decided.

5. But if that averment was insufficient, the objection to the evidence on that ground should have been taken at the trial, or it cannot be considered on appeal.

6. After evidence had been given tending to show that "wool waste" was stored in the depot along with plaintiffs' goods, and that it could be distinguished by its external appearance from ordinary wool, by those accustomed to handling the latter, they were entitled to show that such wool waste was liable to ignite spontaneously, under certain circumstances, and what was the custom of warehousemen in regard to storing it.

7. As to the liability of wool waste to spontaneous combustion, the opinion of manufacturers and others engaged in the wool trade, and shown to possess from experience peculiar knowledge of the subject, might be taken in evidence as that of *experts*.

Whitney and others vs. The Chicago and Northwestern Railway Company.

8. An instruction that, "if there was stored in defendant's depot, with plaintiffs' property, ordinary wool sacks, appearing from all external indications, to contain wool, but in fact containing wool waste, negligence on that account could not be imputed to defendant, unless it appeared (1) that such waste was not a proper article for storage with miscellaneous merchandise, and (2) that some of the defendant's servants knew, or had reason to think, that such sacks contained waste instead of wool"—coupled with another instruction that, "if the depot was burned by reason of the spontaneous combustion of wool waste stored therein, and if the servants in charge of the depot, by the exercise of that care and caution which ordinarily prudent men exercise in the care of their own property, would have discovered such dangerous article, and so stored it that, in case of spontaneous combustion, it would not have endangered the entire contents of the building, and if they failed to do so, defendant was chargeable"—*held* to be a full and correct statement of the law on that subject.

9. A railroad company which stores in its own depot goods for consignees until called for, is bound to ordinary care, like other warehousemen and bailees of goods to be kept for hire.

10. Interest is recoverable upon the value of the goods destroyed by defendant's negligence.

APPEAL from the Circuit Court for *Rock* County.

Action to recover for wool which had been shipped by plaintiffs in Wisconsin by the defendant company's road, consigned to the plaintiffs themselves at Chicago, and which, before its removal by them from the company's "in-freight depot" at the last named city, was destroyed or injured in a fire which destroyed said depot. The character of the several counts in the complaint, and the grounds upon which defendant moved that plaintiffs be required to elect upon which causes of action they would proceed, or that on their failure to do so all but the first two should be stricken out (which motion was denied), will appear from the opinion of Mr. Justice COLE, *infra.* That opinion will also show sufficiently the exceptions taken by defendant to the admission of evidence.

The circuit court charged the jury substantially as follows: "In September, 1868, plaintiffs delivered to defendant, at Waukegan, Illinois, a quantity of wool consigned to themselves at Chicago, to be transported by defendant to that point. This wool arrived at Chicago on the 10th or 11th of that month; was

placed in the building or storehouse of defendant, designated as the 'in-freight depot,' and notice of the arrival thereof given to the plaintiffs, who removed a portion of it from the depot. In the same month, and probably near the same time, plaintiffs delivered to the Milwaukee & St. Paul R. R. Co., at Ripon in this state, another quantity of wool, also consigned to themselves at Chicago, to be conveyed to that point by due course of transportation. This wool was carried by that company to the point where its railroad intersects that of defendant, at Burnett in this state, and was there, in due course of transportation, delivered to the defendant to be conveyed, and it was conveyed by defendant, on its line of railroad to Chicago. It reached Chicago, and was placed in the 'in-freight depot' before mentioned by defendant, on Saturday, September 12, 1868, and on the same day notice of its arrival was given by defendant to plaintiffs in the usual manner. On the next day, Sunday, September 13, this 'in-freight depot' took fire, and plaintiffs' wool therein was thereby destroyed or greatly injured. None of the Ripon wool placed therein on the 12th, had been removed by plaintiffs previous to the fire. To recover damages for such loss of or injury to their wool, plaintiffs have brought this action, They contend that defendant is liable as a common carrier for the loss of the Ripon consignment, and concede that it is not liable as a common carrier, but only as a warehouseman for hire, for the loss upon the Waukegan consignment. On the other hand, defendant contends that it is not liable as a common carrier for the loss on either consignment, nor as a warehouseman for hire, but that in respect to the wool it was a mere gratuitous bailee or depositary. A common carrier is an insurer against all loss or damage to goods in his possession as such, except such loss or damage thereto as may be occasioned by the act of God or of the public enemy. A

warehouseman for hire is only liable for such loss or damage to goods in his possession as such, as results from his want of ordinary care and diligence in keeping the goods safely. A gratuitous bailee or depositary is only liable for injuries to the goods caused by his *gross* negligence. * * * Is defendant liable as common carrier for the loss to the Ripon consignment, or to any portion thereof? Or, in other words, was that lot of wool, or any portion of it, in the possession of defendant as a common carrier, at the time it was burned? The law of this state is, that the liability of defendant as a common carrier continued not only until the wool was deposited in the depot of the company, but until a reasonable opportunity was afforded the plaintiffs to take it into their own possession. *Wood v. Crocker*, 18 Wis. 347. * * * By the law of Illinois, if that is to govern, the liability of the defendant as a common carrier ceased when the wool was unloaded from the cars and placed in the depot, and from thenceforth, and at the time of the fire, its liability for loss of or injury to the property was only that of a warehouseman. *I understand the law to be (and so instruct you) that the legal presumption, in the absence of any evidence on the subject, is, that the parties contracted with reference to the laws of this state.* But this is a mere presumption, and may be repelled by proof. It was entirely competent for the parties to make their contract in this state with reference to the laws of Illinois, in which case the laws of that state would govern in ascertaining and fixing the liability of the defendant. It is not essential that there be an express agreement between the parties to that effect. It is sufficient if it may fairly be inferred from all the circumstances surrounding the transaction that the parties intended to contract with reference to the laws of Illinois. * * * *You will say from a consideration of all the evidence bearing upon the question, whether the implied contract for the*

Whitney and others vs. The Chicago and Northwestern Railway Company.

*transportation of the Ripon consignment was made by the parties with reference to the laws of Illinois. Upon this question the burden of proof is with the defendant.* If you find that it was so made, the laws of Illinois must control, and inasmuch as the wool had been placed in the depot before the fire, under those laws defendant cannot be held liable as a common carrier in respect to either consignment of wool. *But failing to find that the parties contracted with reference to the laws of Illinois, the legal presumption, as I have before said, is, that they contracted with reference to the laws of this state, in which case the rights and liabilities of the parties must be determined by those laws.* By those laws plaintiffs were entitled to a reasonable opportunity, after the wool was put into the depot, to take it away. * * *

*So if you come to the conclusion that our laws upon the subject must govern, you are next brought to inquire whether the plaintiffs had a reasonable time before the fire within which they might have removed the wool. * * * But finding that the laws of this state govern in the premises, and finding also that plaintiffs had no reasonable opportunity to remove the wool, or that there was a portion thereof which they had no such opportunity to remove before the fire, for the loss of the same, or of such portion thereof as plaintiffs had no reasonable opportunity to remove, the defendant is liable as a common carrier. * * * As to all of this wool for which it was not liable as carrier, defendant sustained the relation of a warehouseman for hire, and is liable to plaintiffs for all damages to it caused by the want of reasonable care and diligence on defendant's part, in the storing, keeping and management thereof."*

The defendant excepted to those parts of the above charge which are italicized.

The court also gave certain instructions at the plaintiffs' request, which were excepted to by the defendant. The following are the only ones of these not substantially included in the general charge:

" 3. It was defendant's duty, as warehouseman, to

have a reasonably safe and suitable warehouse—not a fire-proof building, but what is commonly understood to be a safe building; also, to have a sufficient guard or watch in and about it, and to have careful and competent servants in charge of it. After the fire broke out, it was defendant's duty, by its agents and servants, to make timely and proper efforts to save the property in peril; and after the fire was extinguished, it was also its duty to make all reasonable efforts to save the property unconsumed from spoliation and theft." "5. If, by reason of false information given by defendant's agents to plaintiffs, the latter were delayed or prevented from getting any portion of their property from the depot before the fire by the use of reasonable diligence, and thereby such property was damaged by the fire, then defendant is responsible for the consequences of such false information, and plaintiffs had a right to rely upon the written and printed notices given to them by defendant's agents, until differently informed." "6. If the depot was burned by reason of the spontaneous combustion of wool waste stored by defendant therein, and if, by the exercise of that care and caution which ordinarily prudent men exercise in the care of their own property, the agents and servants in charge of such depot on the part of the defendant would have discovered such dangerous article, and so stored it that in case of spontaneous combustion it would not have endangered the entire contents of such building, then defendant is chargeable with negligence as a warehouseman, and is liable to plaintiffs for the damage occasioned by such negligence."

The defendant asked instructions numbered from one to thirty-five, of which only four were given by the court. Among these was the following: "24. If there was stored in defendant's depot, with plaintiffs' property, ordinary wool sacks, from all external indications appearing to contain wool, but which in fact con-

tained wool waste or cotton waste, negligence cannot on that account be imputed to the defendant, unless it appears that such waste is not a proper article for storage in depots with ordinary miscellaneous merchandise, and unless the evidence shows that some of defendant's servants knew or had reason to think that such sacks contained waste instead of wool." The instructions refused were in conflict with others previously given. Only the following need be specially noted: "4. If plaintiffs, by their agent or servant, on Friday, September 11, 1868, paid in full the charges on the twenty-seven bales of wool, and sacks containing the same, received by defendant at Waukegan, and if defendant by its agents then gave to such servant or agent of the plaintiffs a delivery ticket for the whole of said property, and offered to deliver the same into the actual custody and possession of such agent or servant, then defendant is not liable for their subsequent destruction or injury on the 13th of the same month, unless it was guilty of gross negligence in respect to the same, which caused or contributed to such destruction or injury." "10. Defendant is not liable for that portion of the wool and sacks received by it at Burnett Junction, for which it gave a delivery ticket to plaintiffs' agent or servant on the 12th of September, unless it was guilty of gross negligence in respect to the same, which caused or contributed to such destruction or injury."* "16. The defendant exercised

* There was evidence tending to show, 1. That on Thursday the 10th, or Friday the 11th of September, plaintiffs received notice of the arrival of the wool from Waukegan (40 bales), consigned to them; that they made a check for the amount of the charges thereon, and delivered it to a drayman; that the drayman delivered the check at the proper office of the defendant company, and removed one load, containing thirteen bales, to plaintiffs' store, but was prevented by rain from removing the remaining twenty-seven bales before Saturday; and that on Saturday the drayman was sick and unable to go to work, so that said twenty-seven bales were not removed on that day. 2. That notice of the arrival of the 111 bales from Ripon was delivered to plaintiffs about noon on Saturday, the 12th; that the amount of the charges was incorrectly stated therein at only $84, the true amount being $104; that plaintiffs made their check for $84, and

reasonable and ordinary care in the storage of plaintiffs' property, if it used the same or as high a degree of care as is usually exercised by railway companies in storing like goods in readiness for delivery to consignees *at Chicago, Ill.,* under similar circumstances." The same instruction modified, by omitting the words " at Chicago, Ill.," was also refused; but the last clause being further modified, so as to read, " if it used the same degree of care as is usually exercised in storing like property, under similar circumstances," the court gave the instruction in that form.   " 22. If there was wool waste or cotton waste stored in the same depot with plaintiffs' property, that fact will not, in view of all the evidence, warrant a finding of such negligence on defendant's part, as will entitle plaintiffs to recover in this action."   " 23. If there was wool waste or cotton waste stored in defendant's depot with plaintiffs' property, and if you also find from the

---

delivered it to a drayman, with directions to procure the wool; that the drayman presented the check and notice at the proper office of the defendant company between four and five o'clock P. M. of that day; that the defendant's cashier refused to receive the check, because it was for too small an amount; that he made out a second notice for the plaintiffs, stating the amount of the charges correctly, and delivered it to the drayman, telling him that he would have to go back and get another check for the correct amount; that the drayman replied, that he would like to have him (the cashier) fix the matter for him so that he could get a load of the wool early on Monday morning, before the cashier's office would be open; that the cashier gave him a " delivery ticket " on one of the " expense bills," for thirty-six bales of wool (there being a separate " expense bill " for each of the three cars on which said 111 bales had arrived); that the drayman was " at liberty to commence drawing immediately on the receipt of this delivery ticket;" that he did not remove any load that evening, but returned to plaintiffs' store, where he arrived a few minutes before five o'clock, and presented the second notice, and returned the rejected check, saying that he wanted a larger check to pay the freight, on Monday; that plaintiffs did not give him the check then; and that they were then closing their store for the night.  There was also evidence (admitted against defendant's objection), that it was customary among wool merchants in Chicago to close their stores as early as 4½ o'clock on Saturday evening. The " notice " sent to plaintiffs, by the defendant company, contained the following:  " Property remaining at the station over twenty-four hours will be charged storage, or delivered to warehouseman."  Defendant offered to show that it never had charged plaintiffs for storage; but the evidence was ruled out.

Whitney and others vs. The Chicago and Northwestern Railway Company.

evidence that it is the custom of railway companies in general to store all such waste received by them at Chicago in the same depots with wool and other common merchandise, then you cannot find defendant guilty of such negligence in respect to the storage of such waste as will entitle plaintiffs to recover in this action." " 25. If there was any wool waste or cotton waste stored in defendant's depot with plaintiffs' property, the evidence shows that it was contained in ordinary wool sacks, and the defendant had a right to judge of their contents by external indications, and to presume that they did in fact contain wool, and was under no obligation to open them to determine that question." " 26. If there was wool waste or cotton waste stored in the same depot with plaintiffs' property, and defendant was in this regard negligent, it is wholly immaterial, unless such waste caused the fire ; and the fact that the article seen in the ruins after the fire, and supposed to have been waste, was but partially consumed, and that the upper portion, while the under portion was unburnt, and the fact that the fire and smoke first issued from the building a considerable distance to the north from where the witnesses locate the supposed waste, are circumstances tending to show that it did not cause the fire." " 32. The defendant having shown that plaintiffs' property was destroyed by an accidental fire, from an unknown cause, the burden of proof is on the plaintiffs to show that the fire was caused by negligence of defendant or its servants, or that defendant was guilty of some negligence which caused or contributed to cause the destruction of such property." " 34. If there was stored in defendant's depot, with plaintiffs' property, ordinary wool sacks, from all external indications appearing to contain wool, but which in fact contained wool waste, negligence cannot on that account be imputed to the defendant, unless it appears that such was not ordinary merchantable waste, or

that it was negligence on defendant's part to knowingly store ordinary merchantable waste in its depot with miscellaneous merchandise, and that defendant did know or ought to have known that such sacks contained waste instead of wool."   " 35. If it was practicable for plaintiffs to have removed the 111 bales (which, reckoning at fourteen bales to the load, would have been about eight dray loads) on the Saturday before the fire, then it is to be deemed that they consented that this property, or such portion of it as was practicable for them to have removed, should remain in defendant's depot, in its possession, under the limited liability of a warehouseman.    And in determining whether it was practicable for them to have removed this property, you are not to consider what might have suited their convenience as to closing their store at five o'clock in the afternoon, but what was practicable.    So, if they might easily have employed several drays in removing it, you are to consider this fact in determining what was practicable."

Verdict for the plaintiffs, for the whole amount of damages claimed.   New trial denied ; and defendant appealed from a judgment upon the verdict.

*Pease & Ruger*, for appellant, contended, among other things, 1. That as the five alleged causes of action were all founded upon facts constituting only two, plaintiffs should have been compelled to elect. 18 Wis. 17 ; 2 Till. & Sh. Pr. 25, 26 ; 1 Van Santv. Pl. 351–3 ; 9 How. Pr. R. 552 ; 10 id. 160–162 ; 23 Wis. 445.   The error was material, because a great portion of the evidence was not competent or material under any of these causes of action that could properly be joined.   *Railway Co. v. Scott*, 42 Ill. 132. 2.   That the court erred in its instructions, (1.) As to the time when defendant's liability as carrier terminated.   As to the Ripon wool the contract implied by law was, first, to carry safely ; second, to deliver

at Chicago in accordance with the laws of Illinois and the general usages and customs of defendant at that place, and the particular course of business between the parties there; this delivery to be actual, to plaintiffs personally, provided they were prepared to receive and pay charges on the property upon its arrival; otherwise constructive, by a delivery to warehousemen, or by the assumption of that character by the defendant itself. The general rule is well settled, that a contract made in one place to be performed at another, will be presumed to have reference to the laws and usages of the place of performance. So, if it is to be partly performed in one state and partly in another, the laws and usages of each must govern as to the part to be performed within its own borders. Story on Conflict of Laws, §§ 242 [1], 280–284 a; Parsons on Con., Part II, ch. 2, § 5; *Newman v. Kershaw*, 10 Wis. 340, 341; 2 Greenl. Ev. § 186. In the following cases, where the question would have arisen had there been any doubt upon the subject, the laws and customs of the place of delivery were resorted to without question as determining the rights and liabilities of the parties: *Richards v. Railway*, 20 Ill. 406, 407; *Gibson v. Culver*, 17 Wend. 305–308; *Ely v. Steamboat Co.*, 53 Barb. 207; *Bank v. Champlain Transp. Co.*, 16 Vt. 52; 18 id. 141; 23 id. 186; Angell on Carriers, § 316; Angell on W. C. § 197. All authorities agree in holding that the usages and customs of the places of delivery, in general, and the course of business between the parties in particular, determine their rights and liabilities with respect to the property after its arrival at the point of destination. Ang. on Carriers, §§ 301, 302, 311, 316; Bonney on Railway Carriers, p. 31, Rule 6; 2 Redfield on R. W. pp. 51, 53, and note 3, and pp. 120, 121; Redfield on Carriers, § 129; Pierce on R. W. 434–436; Story on Bailments, §§ 539–544, 446–448; 1 Parsons on Con. 660, 661, notes (t) and (u), and 665,

opinion of Gross, J., and 670, 671; *Steamboat Sultana v. Chapman*, 5 Wis. 465, 466.   See also *Renner v. Bank*, 9 Wheat. 588; *Strother v. Lucas*, 12 Pet. 436.   (2.) It was shown beyond question that it was entirely practicable, and therefore plaintiffs had a reasonable opportunity, to remove all the wool before the time of the fire.   It was error, therefore, to submit the question to the jury.  *Storey v. Brennan*, 15 N. Y. 524; *White v. Stillman*, 25 N. Y. 541; *Noakes v. People*, id. 389, 390; *Castanos v. Ritter*, 3 Duer, 370; *R. R. Co. v. Skinner*, 19 Pa. St. 298, 303.   Besides, it seems that the question what constitutes a reasonable time is one of law.   2 Greenl. Ev. § 186, and cases there cited. (3.) Plaintiffs were not excused by the error in the first notice as to the amount of the freight charges. The law of Illinois did not require defendant to notify them of the arrival of the wool; and we are not aware that carriers are anywhere required to notify consignees of the amount of freight charges on their property in advance of inquiry and tender of payment.   It was plaintiffs' duty to use diligence to obtain information of its arrival and of the amount of charges, and to pay the same without regard to the receipt of notice.   *Marshall v. Exp. Co.* 7 Wis. 25. Moreover it was in proof that one of the plaintiffs attended to the shipment of the Ripon wool, bargaining for its freightage at a definite price.   Plaintiffs therefore knew or had the data to compute and know in advance the amount of charges, as well as the time when the wool would be due at Chicago.   They had, therefore, no right to depend upon the receipt of notice for any purpose.   Pierce on R. W. 449, 450. Besides, it was shown that the mistake did not prevent their having time to remove the wool before the fire.   (4.) It was shown that plaintiffs have never paid and defendant has never charged for storage at this depot.   In view of this established course of business between the parties, it is questionable

whether a charge for storage could be collected if made; and it is certain that plaintiffs did not expect to pay, nor defendant to receive anything more than the charge for transportation. Unless this included compensation for storage, therefore, defendant was a mere depositary. This can hardly be held to be the case where the storage is merely for the consignee's convenience. But in any event it is clear that the charge for transportation cannot include compensation for storage longer than to afford reasonable opportunity to remove the property; and where there is no contract expressed or implied for further compensation, the bailment then becomes gratuitous. Ang. on Carriers, §§ 295, 304; Pierce on Am. R. R. Law, 448, 449. (5.) The wool which had been receipted for by plaintiffs' agent was constructively in their possession; and as to that, at least, defendant was a mere depositary. *N. A. & S. R. W. v. Campbell,* 12 Ind. 55. (6.) Defendant having shown that the property was destroyed by an accidental fire from an unknown cause, the burden of proof was on plaintiffs to show defendant's negligence causing the fire or contributing to cause the destruction of the property, and the court erred in refusing so to charge. Story on Bailm. §§ 212, 213, 278, 339, 410 and cases, 454 and notes; Redf. on Carriers, § 699. (7.) When the question is, whether ordinary care has been exercised with reference to a particular matter pertaining to a distinctive business conducted by a known, recognized class of persons, the proper test is, to inquire whether the thing has been done after the usual manner of persons of ordinary prudence *belonging to the same class and at the same time and place;* whether as much care and diligence has been exercised in regard to the matter in question as is usually exercised under like circumstances by persons of ordinary prudence belonging to the same class, in the same age and country. Story on Bailm. §§ 11–14; Ang. on

Carriers, §§ 7, 8; *Richards v. Sperry,* 2 Wis. 223; *Crocker v. Ins. Co.* 8 Cush. 82; *Brand v. R. W. Co.* 8 Barb. 379; Sh. & Redf. on Neg. § 49. Counsel further argued, that the difference in respect to the storage of goods, between railway carriers and ordinary warehousemen (who have the right to determine what goods they will receive in store, and can select their own place for erecting their warehouses) is so great that the same rules cannot be applied to them. (8.) They further argued, that there was no evidence in the case upon which the question whether the depot was destroyed in consequence of the storage of wool waste could properly be submitted to the jury; and that the court erred in refusing instructions asked for defendant on that subject. (9.) Interest was not recoverable unless there was fraud or improper conduct. Sedgw. on Dam. (4th ed.) 403, 404 and notes; *Watkinson v. Laughton,* 8 Johns. 216, 217; *Amory v. McGregor,* 15 id. 38. 3. Counsel farther argued that there were various errors in the admission and rejection of evidence.

*Sleeper & Whiton* and *Conger & Sloan,* for respondents.

COLE, J. We shall not attempt to notice all the exceptions taken to the rulings of the court below on the trial of this cause, but only those we deem the most important and material.

In the first place, it is insisted, on the part of the defendant, that the court below erred in refusing to compel the plaintiffs to elect whether they would charge the company for the property destroyed upon the liability of a common carrier, or upon that of a warehouseman. The complaint contained what would be called, under the former practice, five special counts; the first two charge the defendant upon its promise and undertaking, as a common carrier, to safely and securely transport two several lots of wool from the places where it received them into its possession to

its freight depot at Chicago, and there deliver them
to the plaintiffs; and that, through its negligence and
improper conduct and that of its servants in respect
to the said goods, the same were destroyed by fire;
and the other three counts, in substance, charge that
the company, in consideration of a reasonable reward,
undertook and promised to store and safely keep the
same wool in its warehouse in Chicago, and to pre-
serve the property; but that, through the negligence
and improper conduct of the defendant and its ser-
vants, and their failure to take ordinary care of the
goods, the same were damaged and destroyed by fire.

The defendant put in an answer to these several
causes of action, and upon the trial made a motion—
founded upon an affidavit of one of its attorneys, that
the goods mentioned in the first and second causes of
action were the same as those mentioned in the other
three—that the plaintiffs be compelled to elect upon
which of the causes of action stated in the complaint
they would seek a recovery, and in default of such
election that all but the first and second causes of
action be stricken out of the complaint.   This motion
was denied.   It seems to us that there was no error
in this ruling of the court.

There are no special reasons, nor for that matter
are there any reasons whatever, stated in the affidavit
of Mr. Ruger, why the plaintiffs should be compelled
to elect upon which causes of action they would pro-
ceed.   There were two different lots of wool received
by the company as carrier, at different times and
places.   It might be difficult to tell in advance what
the evidence would show in regard to the liability of
the defendant, and what facts would appear on the
trial.   The proofs might show that even in respect to
the same lot of wool the company was liable as to a
portion as carrier, and as to the rest was only liable
as warehouseman.   Of course the plaintiffs would be
entitled to recover for the loss, if the evidence showed

that the defendant was responsible therefor in either capacity. It does not appear that the defendant was in any way misled by the form of the complaint, or embarrassed in making its defense. It must have known the precise nature of the claim made, and did in fact fully answer each distinct cause of action. It is said that the plaintiff ought to understand his own case, and that the Code requires that he should state the precise facts constituting his cause of action as he expects to prove it on the trial. This, as a general rule, is undoubtedly true; but it is not always possible in a transaction of this character to ascertain the real ground of liability. The present case furnishes a good illustration of the correctness of this remark. Before the proofs were in, it would be impossible to tell whether the defendant could be held to the liability of a carrier or only to that of a warehouseman. And as no substantial reason was shown for compelling the plaintiffs to elect upon what ground they would attempt to charge the defendant, the court, we think, was guilty of no abuse of discretion in refusing to grant the motion. And the same answer manifestly must be given to the exception taken to the ruling of the court in denying the same motion when subsequently made, after some of the depositions were read.

A great number of exceptions were taken to the rulings of the court in admitting and excluding testimony given or offered. These exceptions can only be considered in the most general manner. There was considerable testimony admitted, under objection, in respect to the character and location of the depot building in which the plaintiffs' wool was stored when consumed by fire. In one aspect of the case at least, and as affecting the liability of the defendant as carrier, and perhaps as warehouseman, this evidence was obviously material and pertinent. It was the duty of the company to provide reasonably safe depot

buildings in which freight and property which was transported over its road might be securely stored when convenience and necessity required that such property should be placed in store. The character, then, of this freight depot, the materials of which it was composed, its liability to take fire on exposure, and facts of that nature, were certainly circumstances bearing upon the question of negligence, and whether the defendant had been guilty of any omission of duty in storing the plaintiffs' property in a reasonably safe warehouse.

But it is now insisted that evidence of this character was inadmissible under the allegations of the complaint. The complaint, it is said, laid no foundation for the admission of such testimony, since there was nothing therein stated which apprised the defendant that negligence was predicated upon its failure to provide a suitable and reasonably safe freight depot. It is true, there is no allegation of negligence in this particular. The averment is general, that the property was destroyed while in the defendant's custody through the negligence and improper conduct of its agents and servants, who failed to exercise ordinary care in protecting the property. But it is a sufficient answer to this objection to say that this was not the ground upon which the inadmissibility of the evidence was placed when offered. If this objection had been taken, that the complaint was too general in its allegations to admit the evidence, the objection might have been obviated by an amendment on the trial. We do not intend to decide that the specific act constituting or showing the negligence must necessarily be stated in order to admit evidence to establish it, but merely that under the circumstances the objection that the allegation in the complaint was too general to admit the testimony we have been considering, is not available at this time. Substantially the same objection is taken in the argu-

ment to other testimony which was admitted, in respect to the competency of defendant's servants, that no proper foundation was laid for its admission in the complaint. The objection, however, cannot now prevail, for the reason above given, that it comes too late.

So, also, it appears to us that the evidence objected to in regard to the facilities of the company for putting out fires, or for saving property in case of fire, and whether there was a sufficient watch in and about the depot to give the alarm, and who used the proper means to extinguish the fire, was competent to go to the jury on the question whether the company had exercised reasonable care and diligence in the storage and keeping of the wool. All this testimony had a bearing more or less remote upon that question.

It seems to us that it needs but a few remarks to vindicate the correctness of the ruling of the court below in admitting the evidence in regard to wool waste and its liability to spontaneous combustion under certain circumstances. For there was certainly testimony from which the jury might well have found that wool waste was stored in this freight depot with the plaintiffs' wool. There was evidence, too, that wool waste was generally transported in old, greasy sacks, and that by its weight and external appearance it could be distinguished by those accustomed to handling wool. Manufacturers and persons engaged in the wool trade and acquainted with the different kinds of wool waste were permitted to testify in regard to these different kinds, and the liability of some varieties, particularly "card waste," so called, to ignite when wet or damp and closely packed, and the custom of warehousemen in storing and keeping the article. These persons had practical knowledge and experience in regard to the subject on which they were called on to speak. Inexperienced persons might not know that wool waste under cer-

tain conditions was liable to spontaneous combustion; and therefore persons experienced in handling wool, and who possessed peculiar knowledge upon the subject of wool waste, might properly testify as to its nature and qualities, and how it was regarded in the trade. In a certain sense they were experts, "persons instructed by experience," even if they had not all actually tested by experiment the liability of wool waste under certain circumstances to spontaneously ignite. "On questions of science, skill or trade, or others of the like kind, persons of skill, sometimes called *experts*, may not only testify to facts, but are permitted to give their opinions in evidence." 1 Greenl. Ev. §§ 440 and 440 a, Redfield's ed. Under this well settled principle, we think the evidence in respect to wool waste was admissible. And in this connection we may, perhaps, as well as anywhere, add a few words in respect to the refusal of the court to give certain instructions asked about this wool waste. The court gave the 24th special instruction asked by the company, which was to the effect that if there was stored in the defendant's depot, with the plaintiffs' property, ordinary wool sacks, from all external indications appearing to contain wool, but which in fact contained wool waste or cotton waste, negligence on that account cannot be imputed to the defendant, unless it appears that such waste is not a proper article for storage in depots with ordinary miscellaneous merchandise, and unless the evidence shows that some of the defendant's servants knew or had reason to think that such sacks contained waste instead of wool. This was fairly submitting to the jury the question whether it was negligence on the part of the company to store the wool waste in its depot with other freight, and whether the evidence showed that the agents of the company knew or should have known what the sacks contained. It seems to us that this instruction, together with the sixth instruc-

tion given at the request of the plaintiffs (that if the evidence showed that the depot was burned by reason of the spontaneous combustion of wool waste stored therein, and that, by the exercise of that care and caution which ordinarily prudent men exercise in the care of their own property, the servants in charge of the depot would have discovered such dangerous article, and so stored it that in case of spontaneous combustion it would not have endangered the entire contents of the building, and that they failed to do so, the defendant was chargeable with negligence as a warehouseman), embraced all that it was necessary to say upon this branch of the case.   The 22d, 23d, 25th and 26th instructions relating to the wool waste, asked on the part of the defendant, are either incorrect as propositions of law or assume facts as proven which the jury would necessarily have to pass upon in considering the evidence.   For these reasons they were objectionable.

The exceptions taken to the ruling of the court in giving and refusing to give certain instructions asked, are likewise too numerous to be referred to in detail. We may say, however, at the outset, that all questions as to the company's liability as a common carrier; when that liability ceased; whether the parties must be presumed to have contracted with reference to the laws of this state or the laws of Illinois; and what rule is to govern in respect to the continuance of that liability—are all out of the case, as we interpret the verdict of the jury.

The plaintiffs sued to recover the value of two lots of wool, one of which was shipped at Waukegan, Ill., and the other at Ripon, in this state.   In respect to the former lot, it was conceded that the defendant was not liable as a common carrier, but only as a warehouseman for hire.   For the Ripon consignment it was claimed that it was liable as carrier; and that as to both shipments it was liable as warehouseman.

The jury found that the company was responsible for the entire quantity of wool. Now, it is very evident they could so find only upon the ground that the evidence showed that the company had neglected its duty as mere warehouseman. If it was responsible for the whole loss in that capacity, all questions as to its liability as carrier became immaterial. A moment's reflection must convince any one that this is a correct view of the case. This being so, the remaining question is, What degree of care and diligence was the company bound to exercise in storing and keeping the property? It is claimed on the part of the company, 1st, that it was a gratuitous bailee, and that the degree of diligence required was slight care, and that it was only liable for gross neglect; or, 2d, that if this were not so, then it was only bound to use the same degree of care as is usually exercised by railway carriers in storing similar goods in readiness for delivery to consignees under like circumstances. Both of these propositions were embraced in instructions which the defendant asked should be given. The court, in effect, held that as to all the wool for which the company was not liable as a carrier, it acted in the capacity of warehouseman for hire, and was liable for all damages to it caused by the want of ordinary care and diligence in storing and keeping the property. We think it very clear that this instruction in regard to the degree of diligence required of the defendant was correct and in accordance with the authorities. We know of no reason in law or public policy, which requires any other or different rule of liability to be applied to railroad companies when acting as warehousemen, than is generally attached to that character of bailment. Warehousemen are responsible for ordinary care and diligence in the discharge of the duties incident to the business in which they are engaged; and the railroad company was bound to exercise the same degree of

diligence. If the company is unwilling to assume that responsibility, it should, when the transit is ended, deposit the property in the warehouse of a third party. The position that the defendant, in the storage of the wool in its depot and keeping it there, was acting as a gratuitous bailee, and was not liable for the loss unless guilty of gross negligence, is so obviously unsound that it needs no comment.

The objection to the 32d instruction is, that it assumes that the defendant had shown that the wool was destroyed "by an accidental fire." Now the jury may have found, in all probability did find, from the evidence, that the property was destroyed by a fire occasioned by the spontaneous combustion of the waste wool, and that it was negligence to store so dangerous an article in that building. Indeed, the objection to many of the instructions asked by the defendant is, that they assume facts as proven which are in dispute.

That interest was recoverable has been decided in two cases against this same defendant. *Chapman v. Chicago and Northwestern R. R. Co.* 26 Wis. 295; *Kellogg v. Same*, id. 223.

Upon the whole case, it seems to us that the question of the defendant's negligence was fairly submitted to the jury upon proper instructions, and the jury have found the company liable as warehouseman. We do not feel warranted upon this record in setting aside the verdict upon the ground that it is wholly unsupported by the evidence.

*By the Court.*—The judgment of the circuit court is affirmed.

PAINE, J., took no part in the decision of this case.