CRAMER, SHERIFF, ETC., v. OPPENSTEIN.

1. DUTY OF SHERIFF IN PROCEEDINGS UPON EXECUTION.— In seizing and selling property upon execution the sheriff is bound to pursue with diligence the course prescribed by law, with the view to promote the interests of all parties; he may exercise considerable discretion, for which he will not be held liable so long as he acts in perfect good faith and keeps within legitimate limits; but he cannot safely disregard reasonable business-like requirements.

2. SALES UPON DEFECTIVE INVENTORY.— It is negligence for the sheriff to sell a large amount of miscellaneous merchandise upon an advertised list which he knows to be defective, without ascertaining and making known to the bidders the extent of the discrepancy.    Agreeing to make a rebate in proportion to the shortage does not excuse such negligence; and paying a rebate upon the uncorroborated claim of the purchaser, without any evidence as to the character and amount of the alleged shortage, is still greater negligence.

3. SALES — FOR CASH AND UNCONDITIONAL.— It is the duty of the sheriff to sell for cash; he is not at liberty to make a conditional sale upon his own responsibility; and where he accepts negotiable paper in payment and makes a delivery of the goods, the execution debtor is entitled to treat the reception of such paper as a cash payment.

4. DUPLICATE STATEMENTS IN PLEADING.— Duplicate statements for the same cause of action are not absolutely prohibited by the code; they are sometimes permissible, as where the party cannot reasonably anticipate the evidence so as to safely go to trial upon a single statement.

5. UNNECESSARY STATEMENTS, HOW EXPUNGED.— When the complaint contains three statements of the same cause of action, it is not error to deny a motion to strike out the first and second; though a motion to require the plaintiff to elect which cause or causes of action he would rely on, and that the residue be struck out, might be granted in whole or in part.

*Appeal from Superior Court of Denver.*

THIS suit arises out of the same transaction as the preceding case between the same parties decided at this sitting of the court (*ante*, p. 495).

At the execution sale the merchandise belonging to the Oppenstein stock was sold in bulk for the gross sum of $8,000. The fixtures were sold to other parties for about $139.25. After the merchandise was thus sold, paid for, and possession taken, the purchaser claimed $537 as a rebate, on the ground that there was a shortage in the goods delivered as compared with the inventory under which he purchased. The officer who made the sale paid the rebate as claimed, and thereupon made return that he had received only $7,602.25 as the gross proceeds of the sale of the merchandise and fixtures.

As appears by the preceding case, Oppenstein, by settling with his creditors, became entitled to receive the proceeds of the execution sale. He brings this action against the sheriff to recover the difference between the amount originally bid and paid for the property and the amount returned as the gross proceeds of the sale; in other words, for the amount repaid as a rebate. The cause was tried by the court without a jury and resulted in a finding and judgment in favor of plaintiff for the full amount of his claim with interest. The defendant appeals to this court.

Mr. L. B. FRANCE, for appellant.

Messrs. SULLIVAN & MAY, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

There is very little controversy as to the facts of this case. Under the assignment of errors the principal question to be determined is whether or not the finding of the trial court was warranted by the law under the evidence submitted.

In seizing and selling property upon execution the sheriff does not act as an agent selected by the execution debtor. As to the debtor the proceeding is adverse; it is *in invitum.* The sheriff derives his authority directly from the law by virtue of the process in his hands, and not from the owner

of the property.   In executing his writ he is bound to pursue the course prescribed by law and to act at all times with reasonable diligence, with the view to promote as far as he can justly do so the interests of all parties to the proceeding.   In the discharge of such duties he may and often must exercise considerable discretion as to details, for which he will not be held liable so long as he acts in perfect good faith and keeps substantially within legitimate limits.   But if he would make sure of escaping liability, he cannot disregard common prudence and reasonable business-like requirements.   Murfree on Sheriffs, secs. 990, 996, 1078; Binmore on Sheriffs, sec. 177.   Upon a careful examination of the evidence, we are forced to the conclusion that the proceedings complained of in this case were of the most negligent character.   The under-sheriff who conducted the execution sale testifies that he knew the advertised list or inventory was erroneous before the sale commenced.   He does not show to what extent the inventory was erroneous.   His testimony upon that point is: " At that sale all the goods levied upon under that execution were sold; the goods fell short of the advertised inventory; I did not have all the goods advertised; the discrepancy occurred in this way,— in making out the list for the printer, in several cases they made ' 6–12 of a dozen,' ' 7–12 of a dozen,' ' 5–12 of a dozen,' and the printer got it in at ' 6 dozen,' ' 5 dozen,' ' 4 dozen,' and until the morning of the sale the discrepancy was not discovered."

The goods consisted of a large stock of merchandise, such as boots, shoes, clothing, gentlemen's furnishing goods, et cetera.   It nowhere appears in the testimony whether the " dozens " which the officer claims were erroneously advertised were common muslin neckties, worth twenty-five cents a dozen, or expensive boots and shoes, worth fifty or a hundred dollars per dozen pairs, or other articles more or less expensive.

Notwithstanding the officer knew of this alleged discrepancy, he proceeded to sell the goods in bulk, making, as he testified, public announcement in a loud tone, so that all

could hear, at the commencement of the vendue, as follows: "We sell these goods to check out according to the advertised list; if there is a shortage there will be a rebate made in the ratio of the sale of the goods, the whole, as to the amount." The testimony of the officer concerning this announcement is not altogether corroborated. Other witnesses testified that the announcement was to the effect: "We offer the following goods for sale," and that the advertised list was then read. It makes but little difference which form of announcement was used. The legal effect was practically the same, considering *how the goods were sold, and especially considering how they were delivered and how the rebate was claimed and paid.*

With the exception of the fixtures, the goods were all sold in bulk for the gross sum of $8,000. Several responsible parties made bids, one bidding $7,850, another $7,900.

It was unquestionably very negligent for the officer to sell a large amount of miscellaneous merchandise upon an advertised list which he knew was defective, without ascertaining and making known to the bidders the extent of the discrepancy. Agreeing to make a rebate in proportion to the shortage did not excuse the negligence. Such agreement could not be carried out with any reasonable degree of accuracy. Nor was it reasonable to expect that such an arrangement could be consummated without trouble and conflict between the purchaser and the officer, if the officer should attempt to be faithful to his trust. If the merchandise had been sold at retail, or in lots consisting of a number of articles of the same class and value, the difficulty of adjusting the rebate would not have been so great. But the sale being in bulk of a large quantity of miscellaneous goods, who could say with any degree of certainty what was the value of the supposed missing goods as compared with the value of the whole quantity advertised? It would be a mere matter of opinion at best. Different persons might have very different opinions upon the subject. Some of the other bidders may have had opinions very different from those of the purchaser concerning the rebate to be al-

lowed. Hence, it cannot be said that no injury resulted from the mode of proceeding adopted.

But the manner of making the sale in bulk upon a defective list, with an agreement to make a proportionate rebate for any shortage that might be found, was by no means the most negligent part of the transaction. As soon as the goods were struck off, the under-sheriff, pleading other pressing official engagements, asked and received from the purchaser a certificate of deposit for $2,500 and a check for $5,500 in payment of the goods, and thereupon delivered possession of them and went away, leaving no officer to attend to the delivery and checking of the goods to the purchaser. A few hours later the purchaser, *claiming* that there was a shortage in the goods and that the shortage was of the value of $537, stopped payment on the $5,500 check, and demanded that the $537 be immediately repaid to him. The purchaser, as he himself testified, took no inventory of the goods as delivered; nor did he make any list of the goods claimed by him to be missing. In making his claim for a rebate he exhibited no list of the supposed missing articles; nor did he ever make any statement to the under-sheriff or to any other officer or person concerning the kind, class or quantity of the alleged missing goods; he simply asserted that the shortage amounted to $537; and upon this bald, naked, uncorroborated claim the under-sheriff, without protest, and without attempting to ascertain the truth in respect to the alleged shortage, repaid the full amount claimed by the purchaser. He did this for the reason, as shown by the evidence, that he could not otherwise get a settlement. The proprietor of the auction house testified without contradiction that the under-sheriff told him that he "couldn't make a settlement, that we had got to make a rebate." It certainly was the officer's own fault that he was in the power of the purchaser in respect to the settlement for the alleged shortage.

In this connection it is significant that not even upon the trial was any evidence produced showing the quantity, kind, class or description of the goods claimed by the purchaser

to constitute the shortage. Not a single article of the supposed missing goods was proved or testified to by any person. The under-sheriff himself testified that he had no personal knowledge as to the amount of the shortage. As before stated, he left no officer in charge to look after the delivery of the goods or to take an account of any shortage that might be found to exist. It is true, he says that the proprietor of the auction house represented the sheriff's office in the delivery of the goods, and that according to the figures that the proprietor and purchaser had made, the shortage claimed was correct; but neither the proprietor nor any of his employees testified to taking any account of the supposed shortage; nor does it appear that they did look after or take any such account; or that they gave any attention to the matter. None of them testified that there was any shortage; nor was the absence of such testimony in any manner excused or explained. The proprietor testified that the purchaser and men that he brought there, expressmen, took the goods out of the store; and the purchaser testified that he simply notified the proprietor of the mistake after the goods were checked out. No one but the purchaser gave any testimony in regard to the checking out of the goods according to the advertised list; and he did not undertake to give the court any basis or foundation whatever by which to test the value of the goods claimed by him to be missing. In fact, he did not designate a single article in the advertised list that was not delivered or received by him.

The under-sheriff seems to have yielded every matter connected with the adjustment of the supposed shortage to the absolute dictation of the purchaser — the adverse party in interest. No precaution whatever was taken for the protection of the sheriff or any other party interested in the property. Almost as well might the officer have delivered the goods to the purchaser in the first instance, saying, " Pay me what you think they are worth," as to have made and carried out the arrangement for the sale of the property as he did.

In every aspect of the case there seems to have been an utter want of common, business-like prudence in the manner of conducting the sale, and particularly in the manner of delivering the goods and paying the rebate as demanded. Under the circumstances it is not surprising that the trial court held the sheriff responsible for the full amount at which the goods were struck off to the purchaser.

Appellant cannot be heard to plead that he did not actually receive the full price at which the goods were struck off. In sales upon execution it is the duty of the sheriff to sell to the highest bidder for cash only. He is not at liberty to make a conditional sale or a sale on credit upon his own responsibility. As between the sheriff and Oppenstein, the latter is entitled to treat the acceptance of the certificate of deposit and the check as a cash payment to the sheriff of the full amount for which the goods were sold, in view of the fact that he voluntarily made a complete delivery of the goods upon receipt of such payment. As was said by the supreme court of New Jersey in a recent case: " If he (the sheriff) give an unauthorized credit to purchasers, and deliver possession to them of goods sold at judicial sales, he will not be permitted to elect what remedies shall be pursued against him." Murfree on Sheriffs, sec. 993; *Draper v. State, for use, etc.*, 1 Head (Tenn.), 262; *Disston v. Strauck*, 42 N. J. Law, 546; Binmore on Sheriffs, sec. 188; *Swope v. Ardery*, 5 Porter (Ind.), 213.

Under the circumstances the repayment of the $537 by the sheriff cannot, in any proper view of the law, be justified as a reasonable expenditure connected with the seizure and sale of the property. Since the sheriff at the trial failed to produce evidence of any proper criterion by which to determine how much, if anything, should be allowed in respect to the alleged missing goods, nothing can be justly allowed. In making claim for such allowance the sheriff starts with the confession of his own negligence in knowingly making the sale upon an erroneous advertisement of his own publishing. Hence, it certainly was incumbent

upon him to produce satisfactory evidence to excuse the consequences. He produced none. It is of course to be regretted that appellant should suffer because of the want of ordinary care on the part of his subordinate. But the law in such cases necessarily holds the superior officer responsible for the acts of his deputy.

One further assignment of error requires consideration. The amended complaint upon which this cause was tried contained three separate statements of the same cause of action. The code, section 49, provides that there shall be no " unnecessary repetition " of the "facts constituting the cause of action." Duplicate statements for the same cause of action are not absolutely prohibited. They may sometimes be necessary and therefore permissible, as where there is reasonable cause to believe that the plaintiff cannot safely go to trial upon a single statement. There may be circumstances under which the plaintiff cannot reasonably be expected to anticipate the evidence in advance of the trial. But we need not test the ruling of the trial court by these principles. The defendant's motion was to strike out the first and second causes of action. If the motion had been to require plaintiff to elect which cause or causes of action he would rely on, and that the residue be struck out, the motion might have prevailed in whole or in part. As the motion was framed it was not error to deny it. Bliss on Code Pleadings, sec. 119; *Jones v. Palmer*, 1 Abb. Pr. Rep. 442; *Whitney v. Railway Co.*, 27 Wis. 327.

The judgment of the superior court is affirmed.

*Affirmed.*