## LEONARD ET AL. v. ROBERTS.

1. PLEADING.

The practice of pleading the same cause of action in different forms should be allowed only in exceptional cases, and then only to prevent a failure of justice.

2. SAME.

While double pleadings should be restricted within the narrowest limits, without unnecessarily endangering the plaintiffs' rights, it is *held*, under the circumstances of this case, that defendant's motion to compel the plaintiff to elect upon which count he would proceed was properly refused.

3. BROKERS' COMMISSIONS.

When property is put into the hands of a real estate agent to sell and he directly negotiates a sale or is the moving cause by which one is effected, either by himself or the owner, he is entitled to his commission.

*Appeal from the District Court of Arapahoe County.*

ACTION for commissions for the sale of real estate. Judgment for plaintiff for $1,500. Defendants appeal.

Both plaintiff and defendants were real estate brokers. Shaw, a nonresident owner of certain property in the city of Denver, placed the same with a Boston firm of brokers for sale for $65,000 net to the owner. This firm in turn listed the property with Leonard & Montgomery of Denver, for sale at $70,000, $65,000 of this amount to go to owner, $3,000 to Leonard & Montgomery as commissions, and the balance to the Boston brokers.

Leonard & Montgomery engaged plaintiff Roberts to procure a purchaser for the sale of this property, agreeing to pay him for his services the sum of $1,500 in case of success, Leonard & Montgomery specially reserving the right to sell the property to others.

Roberts solicited a Mr. Blake to purchase the property. Blake declined to buy it, but called Smith's attention to the matter, stating that the same was for sale at the office of Leonard & Montgomery. Roberts at this time had desk room with Leonard & Montgomery, and from this fact Blake supposed that Roberts was a member of the firm, or connected therewith in some way in their business as brokers, and for this reason referred Smith to "the representative of this house." Blake and Smith were at the time associated in business together. Roberts called Blake's attention to this property, stating price, terms, etc., and suggested that it was good property for them to buy. Blake and Smith considered the proposition, but declined to make a joint purchase. A short time thereafter Blake again called Smith's attention to the matter, and Smith after some negotiations purchased the property direct from Leonard & Montgomery for the sum of $69,000, upon substantially the same terms as those given by Roberts to Blake. The remaining facts sufficiently appear in the opinion.

Messrs. LEONARD & SMITH, for appellants.

Mr. C. P. Butler, for appellee.

Chief Justice Hayt delivered the opinion of the court.

In the first count in the complaint a special contract is relied upon; in the second plaintiff seeks to recover upon. a *quantum meruit.* It is admitted that the cause of action is the same in both counts, the double statement being used for the purpose of meeting the exigencies of the proofs. At the trial the court was asked to require the plaintiff to elect upon which count he would proceed. This the court declined to do, and this ruling is assigned for error.

At common law it was the custom to plead the same cause of action in different forms to avoid the objection of variance between the *allegata* and *probata,* but this practice should only be allowed under the reform procedure in exceptional cases and then only to prevent a failure of justice. The code does not absolutely prohibit such pleadings, but provides simply that the facts " shall be stated in concise language, without unnecessary repetition."

It is sometimes impossible for the plaintiff to be certain in advance of the real ground of liability, and while double pleadings should be restricted within the narrowest limits possible without unnecessarily endangering plaintiff's rights, or subjecting him to the danger of a nonsuit, in this case the trial court properly refused the defendants' motion to compel the plaintiff to elect upon which count he would proceed. *Cramer v. Oppenstein,* 16 Colo. 504; *Spaulding v. Saltiel,* 18 Colo. 86; *Wilson et al. v. Smith et al.,* 61 Cal. 209; *Jones v. Palmer,* 1 Abbott's Pr. Reps. 442; *Whitney et al. v. The C. & N. W. R. Co.,* 27 Wis. 327.

The second assignment of error brings up for review the ruling of the district court permitting the plaintiff to testify as to his conversations with Blake, and also permitting evidence of subsequent conversations between Blake and Smith. Plaintiff claimed that he was the procuring cause of the sale; that he presented the property to Mr. Blake, proposing to

sell it to Blake and Smith jointly, and that Blake acting on the information thereby obtained called Smith's attention to the matter. This evidence was all proper and material under the issues, and the objection to its admission is without merit.

There was no error in denying the defendants' motion for a nonsuit, the evidence for plaintiff showing his employment in the capacity of a broker by the defendants; that he was to receive the sum of $1,500 in case a sale was effected through his agency; that the property was in fact sold, and the evidence also tended to show that plaintiff was the efficient procuring cause of the sale. The motion was properly overruled, as there was then before the court competent evidence of every material fact necessary to plaintiff's right of recovery.

The instructions of the court are full and complete. They cover every phase of the controversy between the parties fully and fairly, in plain and concise language. The charge is free from substantial error.

By the arrangement entered into between plaintiff and Leonard & Montgomery, the latter reserve the right to sell the lots themselves if an opportunity should occur. This, however, did not authorize appellants to sell the property to appellee's customer and thereby defeat the latter's right to his share of the commission.

The case of *Anderson v. Smythe*, 1 Colo. Appeals, 253, received very careful consideration at the hands of the court of appeals of this state. The opinion of the majority of the court was written by Judge Reed; the dissenting opinion by Judge Bissell. Although there was a disagreement upon other grounds the judges concurred in the following declaration of the law which we adopt as controlling in this case, viz: " When property is put into the hands of a real estate agent for sale and he directly negotiates one, or is the moving cause by which one is effected, either by him or the owner, the authorities agree that he is entitled to his commission." See opinion by Bissell, J., p. 258.

It is admitted that Leonard & Montgomery had the property for sale; the employment of plaintiff is conceded; there is no dispute as to the amount of the commission. There then remained but one thing further for plaintiff to establish to entitle him to a recovery, that is, that he was the moving cause of the sale. This issue was submitted to the jury under proper instructions and decided against appellants.

It is claimed that the evidence upon this point is not sufficient to support the verdict. We do not think this contention is well founded. The plaintiff, a witness on his own behalf, testified:

" I went to see Mr. Blake about the property. He entertained such a proposition for himself and others. Mr. Smith was connected with it. Blake took lots under consideration at price."

Q. "Did you have conversation with Mr. Blake with reference to he, Blake, and Charles H. Smith purchasing the property?" A. "Yes, sir, I did. This was about last of January, or first of February, and before sale was made. Mr. Blake and Smith were associated together in business, owning a corner on 14th street, near these lots, about 175 feet below on the same street." Q. "Did you have a conversation after that time with Mr. Blake with reference to he and Smith purchasing these lots ? " A. "Had such conversation about a day or two from time first spoke to him."

The witness in answer to other questions testified substantially as follows:

I had conversation with Charles H. Smith with reference to purchasing this property before it was sold. I went to see him and asked him if he had made offer of $60,000 for these lots. He said, yes. That he would not give $70,000 for same. This was on March 5th. The deal between Smith and defendants was closed on March 6, 1890. I did not see Smith at any time before he had made his offer to defendants. On March 6, as I remember, I received this note, in Mr. Montgomery's handwriting:

" JOHN W. ROBERTS, Esq.

"Sir : Just arrived from Boston. The price on the four Lawrence lots is seventy thousand dollars. Not one dollar less to anybody.

"Truly yours,
"JOHN C. MONTGOMERY."

On March 5th, Mr. Montgomery was out of the city. On day the above note was written, I told Mr. Montgomery that Mr. Leonard, his partner, had entertained a proposition of $60,000 from Mr. Smith, $10,000 less than he (Montgomery) had given lots to me. He said Leonard knows our net price is $65,000, and thereupon he wrote note. He then said, now go sell these lots to Blake and Smith. Mr. Leonard came in and they had some talk together, and Leonard protested against not accepting the offer. Montgomery at about nine or ten o'clock of that day notified me to go ahead now and sell as he had notified Smith that $60,000 would not buy these lots. He said, I don't care who they are transferred to, so you sell them. I went then to Blake and showed him the paper; then I went to Smith and told him the lots could not be sold less than $70,000. This was after I got paper of Montgomery. I next saw Smith at defendant's office; I was sitting at my desk about four or five o'clock on the same evening, and defendants were standing together on pavement in front of office when Smith came up and they talked quite awhile; I couldn't hear the conversation, but finally Smith came into office and asked me for a blank check, and I gave him one remarking, you are closing for those lots are you? And he said yes; nothing further was said.

I saw Montgomery at office the next morning and I said I suppose I have made a good commission on this. He said I don't know so much about that. Leonard gave away $1,000 commissions, and he says I don't know about your being entitled to the $1,500. We talked the matter over for a day or so. I went to the defendants and talked with them, but they refused to settle with me. I think I left their office in about two weeks after. After I had left, he came to me at

Chamberlin's and says Smith wants to back out of that trade. I said I don't know anything about that. Finally he came back and said Blake wanted to back out. He said Smith said Blake has gone back on him. I said, I reckon not. Again he insisted that Blake had backed out and accused me of knowing all about it. I told him I didn't. I went at his request to see Blake.

Blake said if he didn't take any interest in the lots, that it would be all right with Smith. This was before deed passed. After that Montgomery told me he had made up his mind that Smith would take the lots and wrote him a letter telling him he must take it. He afterwards told me that Blake had backed out and that Porter, Smith's brother-in-law, had taken an interest with him. He told me he had finally closed the deal with Smith and Porter. He refused then to pay me commissions and denied I was entitled to same.

The witness further testified that he talked with Mr. Leonard after the sale with reference to these commissions and that he said, " from what I said and what Smith said I was entitled to commissions, but I must settle with John C. Montgomery."

Mr. Blake testified in part as follows :

I said to Roberts that individually I was not buying any real estate, but that Smith and I together had thought for several months past of buying 200 to 275 feet on Lawrence street from 14th towards 15th, and building a hotel, and those lots he referred to came within the scope, and provided he could purchase some other intervening lots that we couldn't get hold of we might purchase the lots he offered. I talked with him several times, not more than a week apart. I could not tell whether I talked to Smith between the time Roberts called the first and second time or not, but I should say within ten days from the first conversation I had a talk with Smith.

Q. "Then as I understand you, in your examination in chief, you never named Mr. Roberts to Mr. Smith? A. I

could not say so. It is quite likely I did, but I could not say distinctly that I did. I was quite as likely to say the representative of this house, because I supposed he was representing the house."

James Leonard, one of the defendants, testified on cross-examination :

" Roberts said the second or third day after Mr. Smith had commenced negotiations with me, that Blake was his customer and that Blake was buying for himself and Smith."

There is other evidence of like import to the foregoing. From this the jury were at liberty to conclude that Smith, the purchaser, was found and induced to buy through the efforts of plaintiff, that the latter was the producing cause of the sale and consequently entitled to recover. *Lloyd v. Matthews*, 51 N. Y. 124; *Sussdorff v. Schmidt*, 55 N. Y. 319; *Lincoln v. McClatchie*, 36 Conn. 136; *Anderson v. Cox*, 16 Neb. 10; *Holley v. Townsend*, 2 Hilton, 34.

Although this evidence was contradicted in some essential particulars by witnesses introduced on behalf of the defendants, it was the peculiar province of the jury to settle this conflict and the verdict in favor of plaintiff cannot be disturbed in this court.

*Affirmed.*