JOHN H. BALLOU *vs.* EPAPHRAS K. PRESCOTT.

*Physician's duty to patient. Burden of proof.*

Though the language used and the effect of it are questions of fact for the jury, in controversies relating to a contract by parol, yet it is also true that in many cases the law will infer a definite, though perhaps implied contract from certain admitted facts. At least it will infer certain elements as belonging to particular contracts, or impose specific duties in connection with, and growing out of special undertakings, although these are entered into by parol.

Especially is this true of contracts growing out of an employment *quasi* public in its nature, like that of a professional man.

Thus, the care and skill which a professional man guarantees to his employer are elements of the contract into which he enters by accepting a proffered engagement. So, continued attention to the undertaking, so long as attention is required, in the absence of any stipulation to the contrary, is equally an inference of the law.

While it is competent for a physician and his patient to enter into such a contract as they think fit, limiting the attendance to a longer or shorter period, or to a single visit, if they please; and while, if there be no such limitation, the physician can discontinue his attendance at his election, after giving reasonable notice of his intention to do so; yet, if he be sent for at the time of an injury by one whose family physician he has been for years, the effect of his responding to the call will be an engagement to attend to the case, so long as it requires attention, unless he gives notice to the contrary, or is discharged by the patient; and he is bound to use ordinary care and skill, not only in his attendance but in determining when it may be safely and properly discontinued.

If a surgeon, called to attend one who has long been his employer, leaves his patient before he has been properly cared for professionally, or while he needs further attention, and relies upon an alleged discharge by the patient as a defence to a suit brought for the abandonment; this being a new substantive matter of defence, the burden of proving it is upon the defendant.

ON EXCEPTIONS.

CASE, against a physician, or surgeon, for malpractice in treating the plaintiff for an injury to his left leg, received May 20, 1870.

The plaintiff testified that Dr. Prescott had been the family physician for many years, and that he was sent for and arrived within an hour of the time when the injury was received; made an examination of the limb, said nothing about calling again, and never did call afterward, nor was he ever sent for again. Dr. Prescott stated, on the contrary, that as he was about leaving he said: "Ballou, shall I call and visit you any more?" that the reply was: "I will leave it to you;" and the doctor testified, "I guess my answer was, 'oh, no.' Then I think some words passed, and to wind up I said something like this: 'then I shall not visit,' or, 'I shall not visit you any more unless you call for me,' and left him immediately." Mary E. Trask, summoned by the defendant, was present when the wound was dressed, and "heard the doctor say, when he left, that if he was needed again, to send for him."

She did not hear Mr. Ballou say anything. *Per contra*, Charles A. Sanderson, also present all the time, did not hear aught said about coming again, or being sent for ; and did not think anything was said about it.

This was the substance of all the testimony upon this particular branch of the case to which the exceptions apply. The jury gave the plaintiff a verdict for four hundred and fifty dollars. The defendant moved to set it aside as against law and evidence, which motion was overruled. He also excepted to the charge of the judge in the following particulars :

The defendant's counsel requested the court to instruct the jury as follows : "That if defendant was to attend plaintiff during his illness or lameness and did not attend, and that was known to plaintiff; and ordinary care on his part required him to send for defendant again, or employ another surgeon to treat him, it was his duty to do so, and for such damages as resulted from such neglect defendant would not be liable." This instruction was given qualifiedly, thus:

"I believe I have given that. I have already stated to you, as you understand, if he was misled by any directions, or any want of directions, which it was his duty to give, why, it is not for the defendant to complain of that. But if he did not go to him, not exercising the ordinary care, such as I have described, without being misled by the defendant's directions, and he neglected to do what he ought to have done in the way of sending for this man, or another surgeon, why, of course whatever damage happened from that want of ordinary care, or from that neglect on the part of the plaintiff, he could not recover for."

Before this request was made and answered as aforesaid, the judge had instructed the jury, in a manner not excepted to, as to the necessity for reasonable professional skill in the physician and the exercise of it and of ordinary care in the actual treatment of that particular case ; and that if such skill was possessed and such care exercised, then in those respects the defendant would be exonerated from liability. He then further remarked :

"If he did not, why then he would be liable for that dereliction of duty.  But there is one other question presented in connection with this, to which it is necessary that I should call your attention.  It is said, on the one hand, that his duty ended with that first visit, and that he is not in fault for what happened subsequently to that.  On the other hand, it is claimed that his duties continued.  Here is a question of fact as well as of law.  In regard to the law upon this matter, I apprehend there is no doubt about it.  When a physician or surgeon is called upon to attend a patient, it is perfectly competent for the parties to make just such a contract as they see fit, and in accordance with this view, I understand it is sometimes a practice among certain physicians and surgeons, to make a contract to attend upon certain families of persons, and specifying a time or by the year, whatever may be their sickness, longer or shorter, to do whatever duties may be required of them during the year.  So it is competent for them to make a contract regulating their attendance for a single sickness, longer or shorter, and it is competent after they have made a contract, if one is made at all, for the parties.to rescind it.  Here, I understand the surgeon was called in the usual way, and nothing said about the time during which he was to attend, and he went in obedience to that call.  If nothing more was said, and nothing more was done, the law would require him to give such attention as the case or the patient required.  If this injury required that degree of treatment which it was proper to be rendered him, be it longer or shorter, and if nothing was said about the time, it was competent for either party to rescind that contract any time they saw fit.  It was perfectly competent for the patient to discharge his physician or surgeon, and it was just as competent for the physician or surgeon to discharge his patient.  The privileges are mutual; their rights are mutual; the same rights, each have.  But supposing the patient was in a condition that required longer treatment.  It would not be proper—it would not be legal—the defendant would not have a right to say nothing to that patient, and go off and abandon him in that condition, when he required

further treatment, when he had not been discharged, and when he himself had not discharged his patient. In order to do that, it would be necessary for him either to continue his treatment until he is discharged, or to give his patient notice, and sufficient notice to enable him to procure other proper medical attendance. There are many cases where it would be exceedingly critical and dangerous, for a physician at once to leave a patient. The law does not authorize him to do that, his patient being in that critical and dangerous condition. But so long as his attendance and treatment are required, so long he must do it, unless he himself chooses to discharge his patient by giving him the proper notice that he will not attend further."

The judge then presented the issue of fact to the jury as to the manner of Dr. Prescott's leaving Mr. Ballou, and whether or not anything was said about his coming again or being sent for; remarking that it was perfectly competent for the parties to make any such arrangements of those matters as pleased them; and submitting to the jury what, if any, were made in this instance; and then proceeded to instruct thus, in case nothing was found to have been said by Dr. Prescott when leaving:

"I understand it to be the duty of a surgeon, when he is called upon to attend, to exercise his own judgment, in the absence of any agreement, or discharge on the part of the patient, or with the patient—that he should exercise his own judgment as to the propriety of coming again, and in exercising that judgment, he is to exercise the same degree of skill or knowledge of the accident or disease which he is attending, and the same degree of care which he should exercise in its treatment.

Now if he informed this plaintiff, that from the nature of the injury it was unnecessary for him to come again, unless some new developments took place, why then a question arises whether in the formation of that judgment, he exercised this ordinary care and skill to which I have called your attention, upon the main question. If he did, why then, although he might have been mistaken, he would not be liable for any bad results which might fol-

low from it, any more than from any mistake in judgment, which he might exercise in the treatment of the injury itself; the same rule, precisely, would apply. And if that was the true state of things, why then you will inquire, and see whether it was so, or not, and inquire of course, whether he did exercise that degree of skill and care in forming that judgment which is required in the treatment of the disease.

And this also, would have a bearing upon his duty, as to further attendance. If he did form that judgment, and so notified the plaintiff, why then he would have no occasion for attending further; that is, if in this exercising of all due care and skill, he had come to that conclusion, and so informed the plaintiff, why then his duties would cease at that time.

These, gentlemen, I believe, so far as they occur to me, are all the principles of law which are applicable to the duties. In regard to this discharge to which I am requested to call your attention, it should be proved, and you will perceive from the instructions, I think, that I have already given you, that if there was nothing said about that, the burden of proof would be upon the defendant, to show that his duties had ceased then, unless you are satisfied, that in the exercise of a sound judgment, that degree of judgment which is required, he gave notice that his attendance (or substantially to that effect) would not be longer needed, with the request that he should be notified if he was required, if any further development should take place. So far as the discharge alone is concerned the burden of proof would be upon the defendant, to show that he was discharged; because he assumes the affirmative there, and says that he was discharged."

The judge then gave unexceptionable instructions upon the question of damages, and concluded the charge by reading Mr. Libbey's above mentioned request and then modifying it, as hereinbefore shown.

_A. Libbey_ for the defendant.

The contract between the parties was proved by parol, and it was a question of fact for the jury to determine what the contract

was. This proposition is so well settled it is unnecessary to cite authority. The court could not, as a matter of law, determine what the contract was from this evidence. It was for the jury to find whether the contract was for one visit only or for taking charge of the plaintiff so long as he needed surgical or medical treatment. To constitute a contract between the parties they must have understood it alike, and assented to its terms and conditions. In determining the question, the jury should consider all the circumstances of the case, as well as the evidence given by the witnesses. They should consider the nature of the plaintiff's injury; what it was understood to be at the time by the plaintiff and by defendant. The skill and place of residence of the defendant as understood by the plaintiff, and whether either or both of the parties understood that one visit only was required by the plaintiff's condition.

It might be that the person called to attend in such a case was understood as not possessing sufficient skill as a surgeon to treat the case, and was merely called in the emergency, to care for the person injured till competent aid could be procured. It might be that the family physician was away from home, and another was called to attend till the family physician returned, and that from a knowledge of the circumstances both parties so understood it, though nothing was said. It might be that a very skilful surgeon was called from a great distance at large expense, and from the circumstances both parties understood it was for one visit only though nothing was said about it.

These illustrations are used to show that the court cannot assume, as matter of law, from the fact that a surgeon or physician is called to a person injured or sick, that the contract between the parties is for one visit or more than one.

The substance of the instruction to the jury was that the defendant was called in the usual way, and was bound to attend the plaintiff so long as he needed treatment, unless the contract was terminated in the manner specified in the charge; and that the burden of proof was on the defendant to show that the contract

was thus terminated. The jury should have been instructed that the defendant undertook to treat him so long as his injuries required treatment; and on this point they should consider the fact that the defendant was called, and all that took place between the parties, if anything, in regard to it, at the first visit, and the surrounding circumstances.

The rule given to the jury required the defendant to prove affirmatively that he was discharged by the plaintiff, or discharged his patient by giving him reasonable notice that he should cease to attend him; or that, in the exercise of due skill and discretion he determined that the plaintiff needed no further attendance and notified the plaintiff of the fact. This I submit is error.

The action is case for want of skill or negligence on the part of the defendant, in treating and taking care of the plaintiff. The burden of proof is on the plaintiff throughout the whole case to show want of skill or negligence. If he relies on the fact that the defendant made one visit only, and was guilty of negligence in not continuing his treatment, the burden is on the plaintiff to show that the defendant undertook to treat him as long as he needed treatment, and that he needed further treatment; that in the exercise of due skill and care the defendant would have known he required further treatment, and did not continue it, by reason of which the plaintiff was damaged. In an action of tort for negligence the burden of proof is on the plaintiff to show negligence throughout the whole case on every point involving due care.

*Joseph* and *Orville D. Baker* for the plaintiff.

DANFORTH, J. This is an action against the defendant as a surgeon for alleged malpractice, and one of the causes of complaint set out in the writ is that he abandoned his patient while still needing medical attention. The exceptions raise the question as to the nature of the contract between the surgeon and his patient.

Upon this point the jury were instructed as follows: "Here I understand the surgeon was called in the usual way, nothing said about the time during which he was to attend, and he went in obe-

dience to that call. If nothing more were said or done, the law would require him to give such attention as the case or patient required." It is suggested that, by this ruling, that which was really a question of fact for the jury, was decided as a question of law ; or in other words, whatever contract existed between the parties, being verbal, it was the province of the jury to settle its terms. As a general proposition this is undoubtedly true ; but it is equally true that in many cases from certain admitted facts, the law will infer a definite contract, implied perhaps but none the less distinct and certain. Much more will it infer certain elements as belonging to particular contracts, or impose specific duties in connection with and growing out of special undertakings. Especially is this true of all that class of cases in which the contract grows out of an employment, in a greater or less degree public in its nature. All professional business partakes somewhat of this character. The care and skill which a professional man guarantees to his employer are elements of the contract to which he becomes a party on accepting a proffered engagement. They are implied by the law as resulting from that engagement, though it be but verbal, and nothing said in relation to such elements. So continued attention to the undertaking so long as attention is required in the absence of any stipulation to the contrary, is equally an inference of the law. If a counsellor at law undertakes the management of a cause, nothing more being said or done than simply an offer and acceptance of a retainer for that purpose, it will hardly be denied that an abandonment of the cause before its close would be as much a violation of the contract with the client as a neglect to use the requisite care and skill in its prosecution, and the duty of continued attention is equally an implication of the law as that of exercising the required care and skill.

That the same principles apply to the employment of a physician or surgeon there can be no doubt. If he is called to attend in the usual manner, and undertakes to do so by word or act, nothing being said or done to modify this undertaking, it is quite clear as a legal proposition that not only reasonable care and skill should

be exercised, but also continued attention so long as the condition of the patient might require it, in the exercise of an honest and properly educated judgment, and certainly any culpable negligence in this respect would render him liable in an action. *Barbour* v. *Martin*, 62 Maine, 536 ; Shearman & Redfield on Negligence, § 441.

In this case it is hardly possible that the jury could have been misled by the instruction complained of, for in its terms it was not only legally correct but it was guarded by other instructions not excepted to, in regard to the competency of the parties to make for themselves such a contract as they might see fit, to limit the attendance for a longer or shorter period, or for a single visit ; and that, without any limitation the defendant might at any time discontinue his visits upon reasonable notice.

These instructions would seem to be all, if not more than all under the testimony the defendant was entitled to. It appears that he was at the time, and had been the plaintiff's family physician; that he was sent for and responded in the usual manner, while there is nothing to show that he was not expected to attend so long as necessary, or that he did not so understand it. On the other hand it appears affirmatively that he alone was relied upon as the attending surgeon, and so understood it.

Another objection is raised to the instruction as to the burden of proof. It is undoubtedly true that in an action of tort the burden is upon the plaintiff all through to give the jury reasonable satisfaction of the alleged wrong on the part of the defendant. But when the defendant takes the ground that the act or want of action was not a wrong because by the terms of the contract or its rescision he was justified, he assumes an affirmative and so far the burden of proof.

The defendant is charged with negligence in abandoning his patient while in need of medical care ; admitting the fact of nonattendance, he attempts to justify, not only on the ground that no further attention was necessary but also on the ground of notice that he should not attend further unless sent for ; and that the contract was thus rescinded and he discharged.

As to the first ground, the burden would continue upon the plaintiff, for there would be no delinquency unless the defendant had failed to exercise the required judgment or carelessly neglected his duty. But upon the latter ground the defendant sets up a new fact in avoidance, and that he must prove before it can avail him. To this and this alone the instruction applied. The first part of it may perhaps be a little uncertain in its meaning, and the presiding justice, apparently so fearing, to prevent any misunderstanding adds these words : "So far as the discharge alone is concerned the burden of proof is upon the defendant to show that he was discharged." In this we see no error. *Exceptions overruled.*

APPLETON, C. J., DICKERSON, BARROWS and VIRGIN, JJ., concurred.