[No. 4743.]

The Vindicator Consolidated Gold Mining Com-  •
pany, a Corporation, v. Firstbrook.

**1. Practice in Civil Actions—Examination.**

Where, in an action for the death of an employee and in
which it was claimed that defendant was insured against the ac-
cident, it was not error for the trial court to permit plaintiff's
counsel to ask the jurors, on their voir dire, whether they were
interested, as agents or otherwise, or ever had been interested in
such insurance company.—P. 502.

**2. Practice in Civil Actions—Witnesses—Cross-examination—**
   **Interest in Cause.**

Where, in an action for the death of an employee, defendant
pleaded a release alleged to have been obtained by an agent of
the company in which defendant was insured, and there was a
conflict of evidence in regard to the circumstances under which
the release was obtained, it was competent for the plaintiff to
bring to the attention of the jury the interest which the witness,
by virtue of his relation to the insurance company, had in secur-
ing the release, as well as the fact that whatever judgment
should be rendered against the defendant would have to be paid
by such insurance company.—P. 503.

**3. Practice in Civil Actions—Witnesses—Credibility—Cross-**
   **examination.**

Matters brought out on cross-examination, which are legiti-
mate for the purpose of enabling the jury to determine the credi-
bility of a witness, are not objectionable, although they may
relate to questions not in issue in the case.—P. 503.

**4. Pleading—Cause of Action—Counts.**

Notwithstanding that section 49 of our Civil Code requires
that the complaint shall contain "a statement of the facts consti-
tuting the cause of action in ordinary and concise language with-
out unnecessary repetition," a plaintiff may state a cause of action
arising out of the same transaction in more than one count when
it appears that such pleading may be necessary to meet the
possible proofs which will for the first time fully appear at·
the trial.—P. 504.

**5. Master and Servant—Death of Servant—Pleading—Complaint**
   **—Counts, Consistent—Election.**

In an action for the death of an employee, the complaint con-
tained two counts, the first, for negligence of defendant in fail-
ing to furnish decedent with a safe place to work, and the second,

based upon the Co-employee Act (Sess. Laws 1901, p. 161), alleging that the death was caused by negligence of a co-employee. Held, that the liability of the defendant was based either upon its own negligence, or upon the negligence of a fellow-servant of the deceased in the employ of the defendant, and therefore the two counts were not inconsistent in a legal sense, as they only state different grounds of liability for the .same ultimate act; and hence plaintiff had the right to submit to the jury the question of which count was established, and she could not be compelled to elect on which count to rely.—P. 504.

6. **Appellate Practice — Incompetent Testimony — Prejudicial Error.**

The reception of incompetent testimony, where it affirmatively appears that the objecting party was not prejudiced thereby, does not constitute reversible error.—P. 506.

7. **Appellate Practice—Practice in Civil Actions—Evidence—Admission. .**

Where, in an action for the death of an employee, the complaint charged both negligence of defendant in failing to provide decedent with a safe place to work and negligence of a fellow-servant, which latter fact was established by undisputed evidence, and the only material question was whether decedent was guilty of contributory negligence, the admission of evidence, over defendant's objection, that certain rails guarding the entrance to defendant's mine shaft, down which decedent fell, were constructed and arranged differently than those intended for a similar purpose in other mines in the vicinity, was without prejudice.—P. 506.

8. **Master and Servant—Death of Servant—Assumed Risk.**

Where an employee in defendant's mine was killed by reason of a fellow-servant negligently raising certain rails guarding a shaft before the cage reached the level on which the men were standing, and it did not appear from the evidence that decedent was aware that anyone was in the habit of raising such rails until the cage was in place, while decedent assumed the ordinary risk incident to the use for which such rails were designed, he did not assume the risk resulting from their negligent operation by a co-employee of which he was not aware.—P. 507.

9. **Master and Servant—Death of Servant—Evidence—Contributory Negligence—Question for Jury.**

When the determination of the question of contributory negligence depends upon inferences which may be drawn from facts and circumstances of a character that different minds. may honestly draw different conclusions from, such questions should be left to the jury.—P. 508.

10. **Master and Servant—Death of Servant—Evidence—Contributory Negligence.**

In an action for the death of an employee, caused by his falling down a shaft, the evidence showed that certain guard-rails used for protecting the shaft were raised by a co-employee, but that the deceased was not aware of this act as it was not the custom, nor was it necessary to raise these guard-rails until the cage had descended to its place. Held, that deceased, as a reasonably prudent person, was not called upon to anticipate that anyone on the opposite side of the shaft, and aware of his presence, would recklessly expose him to the danger incident to raising the guard-rails, an appliance expressly provided to prevent employees from falling into the shaft when the cage was not in place.—P. 508.

11. **Master and Servant—Practice in Civil Actions—Pleading—Variance.**

Where, in an action for the death of an employee, the complaint alleged that it was necessary for decedent to approach the shaft along the level he was on in order to get on the cage, which was being lowered to that level, to raise him and his co-employee to the surface, evidence that decedent approached the shaft and leaned against the guard-rail while waiting for the cage to descend, does not constitute a fatal variance.—P. 509.

12. **Master and Servant—Damages—Release—Rescission—Consideration—Tender.**

Where, in an action for damages for the death of an employee, defendant pleaded a release, and plaintiff pleaded that it was given without consideration and the jury so found, defendant cannot object that plaintiff cannot maintain the action without first rescinding the release and tendering a return of the consideration received, as there was neither a contract of release to rescind nor any consideration received by the plaintiff for the alleged release which she could tender back.—P. 510.

13. **Appellate Practice—Finding of Fact—Questions not Raised at Trial.**

Where defendant attacks the validity of a statute upon the ground that it had been improperly passed, such contention involves a finding of fact and hence cannot be raised for the first time on appeal.—P. 510.

14. **Constitutional Law—Co-employee Act—Deprivation of Property—Due Process of Law.**

The Co-employee Act (Sess. Laws 1901, p. 161) making employers liable for damages resulting from injuries to, or death of, an employee caused by the negligence of a co-employee in

the same manner, and to the same extent, as if the negligence causing the injury or death was that of the employer, is not unconstitutional on the ground of depriving employers of their property without due process of law; nor does it deprive the employer of any defense to the liability thereby imposed, which could be regarded as sufficient under the established rules of law, save and except his own lack of negligence, and such a defense is not a constitutional right.—P. 510.

**15.  Master and Servant—Constitutional Law—Co-employees' Act.**

For the purpose of providing for the safety and protection of employees, in the service of a common employer, the law-making power has the undoubted authority to abrogate the exception to the general rule of respondeat superior in favor of the employer, and make him liable to one of his employees for damages caused by the negligence of another employee while acting within the scope of his employment, regardless of the fact that such employees are fellow-servants.—P. 512.

*Appeal from the District Court of Teller County.*
*Hon. William P. Seeds, Judge.*

Action by Kate Firstbrook against The Vindicator Consolidated Gold Mining Company. From a judgment for plaintiff, defendant appeals.

Decision *en banc.*                    *Affirmed.*

Messrs. Bryant & Lee, Mr. Milton Smith, and Mr. Chas. R. Brock, for appellant.

Mr. James J. McFeely (Mr. John M. Waldron, of counsel), for appellee.

Chief Justice Gabbert delivered the opinion of the court:

Appellee, as plaintiff, commenced an action against the appellant, as defendant, to recover damages for the death of her husband, resulting from injuries sustained by falling down the shaft of a mine owned and operated by the defendant, in which he was employed. The jury returned a verdict for the plaintiff. From a judgment thereon the defendant appeals. We shall consider the errors assigned

by the defendant in the order presented by its counsel. The facts upon which these errors are based will be stated in connection with the questions considered and determined.

1. In examining the jurors on their *voir dire,* counsel for plaintiff was permitted, over the objection of the defendant, to ask them whether or not they were interested, as agent or otherwise, or ever had been interested, in The Frankfort Marine Accident & Plate Glass Insurance Company. In the selection of jurors counsel are allowed considerable latitude not only for the purpose of ascertaining whether grounds exist for challenges for cause, but, also, for the purpose of intelligently exercising peremptory challenges. Such questions are for the purpose of eliciting information from, and not imparting it to, the jurors. They are not barred, however, though directed to matters not in issue, provided it appears they are pertinent, are made in good faith, and for the purpose of excluding from the panel partial or prejudiced persons, or those who, by reason of interest in the result, would be incompetent. —*U. P. Ry. Co. v. Jones,* 21 Colo. 341; *Swift & Co. v. Platte,* 72 Pac. (Kan.) 271.

The fact that the defendant may have been insured in the company named against loss resulting from the death of an employee was not an issue; nor would such insurance affect its liability to the plaintiff; but where, as in this instance, the inquiry of the jurors was limited to their interest in the insurance company named, and nothing more, it was not error to allow such inquiry as would develop their interest in the result of any judgment which might be obtained by the plaintiff any more than any other which might show such an interest in the result of the action as to render them incompetent as jurors.

In announcing this rule, we must not be understood as departing in the slightest degree from the salutary one announced in *Coe v. Van Why,* 33 Colo. 315, where it appeared that the statement of counsel in argument that the defendant was insured in an employers' liability company was made for the purpose of prejudicing and influencing the jury in favor of the plaintiff, and not to elicit information touching their competency to sit as jurors in the case.

In this connection it is also urged that the court erred in permitting counsel for plaintiff to bring out, on cross-examination of the witness, Brooks, the fact that whatever judgment should be rendered against the defendant would have to be paid by the insurance company. The defendant had pleaded a release. The witness was offered to prove its execution by the plaintiff. It appears that he was not employed by the defendant to secure this release, but in doing so was acting as the agent of the insurance company. There was a conflict in the testimony with respect to the circumstances under which this release was obtained and it was competent for the plaintiff to bring to the attention of the jury the interest which the witness, by virtue of his relation to the insurance company, had in securing the release, as well as in the result of the action. Matters brought out on cross-examination which are legitimate for the purpose of enabling the jury to determine the credibility of a witness, are not objectionable, although they may relate to questions not in issue in the case.

2. The complaint contained two counts: The first alleged that the injury which caused the death of plaintiff's husband resulted from the negligence of the defendant in failing to furnish the deceased with a safe place in which to work. The second count was based on the Co-employee Act, found in the Session Laws of 1901, at page 161, and alleged

that the death of the husband was caused by the negligence of a co-employee.   At the conclusion of the introduction of testimony on the part of the plaintiff, the defendant moved to compel her to elect upon which count she would rely for recovery.   This motion was denied, and the defendant assigns error on the ruling.    Section 49 of our Civil Code requires that the complaint shall contain "a statement of the facts constituting the cause of action in ordinary and concise language, without unnecessary repetition." Under provisions of this character the tendency of the courts is to restrict within the narrowest limits possible the right of a plaintiff to state a cause of action in more than one count.   The plaintiff had but one cause of action.   The liability of the defendant was based either upon its negligence, or the negligence of a fellow-servant of the deceased in the employ of the defendant.   The two counts were not inconsistent in a legal sense.    They state different grounds of liability for the same ultimate act, from which different legal reasons, dependent upon the proofs, could be deduced why the defendant might be liable in damages for the death of the plaintiff's husband.   Whether the proximate cause of his death was the negligence of the defendant, or the negligence of a fellow-servant, depended upon developments at the trial.   If plaintiff had relied upon the negligence of the former and the proofs established that her right of action, if any, depended upon the negligence of a fellow-servant under the act in question, she must necessarily have suffered a nonsuit, unless permitted to amend her complaint, a question, however, upon which we express no opinion.   It must, therefore, follow, that notwithstanding the provision of our code, a plaintiff may state a cause of action growing out of the same transaction, in more than one count when it appears that such plead-

ing may be necessary to meet the possible proofs which will, for the first time, fully appear at the trial.—*Cramer v. Oppenstein*, 16 Colo. 504; *Leonard v. Roberts*, 20 Colo. 88; *Manders v. Craft*, 3 Colo. App. 236; *Beauregard v. Webb Granite, etc., Co.*, 160 Mass. 201; *Brinkman v. Hunter*, 73 Mo. 172; Pomeroy's Rem. and Rem. Rights, § 576; Bliss' Code Pleadings, §§ 119-120.

Tested by this rule, it is apparent that the court did not err in overruling the motion of the defendant to require the plaintiff to elect upon which count she would stand, because, having the right to plead her cause of action in two counts, she had the right to submit to the jury for their determination which count was established, subject, of course, to such control of the court as might be proper upon the evidence.

3. Over the objection of the defendant the court permitted witnesses on the part of the plaintiff to testify that the rails guarding the entrance to the shaft down which the husband of plaintiff fell were constructed or arranged differently from those intended to serve the same purpose in other mines in the vicinity. This is assigned as error upon the ground that proof of a custom or usage cannot be shown to establish negligence.

In the circumstances of this case it is not necessary to pass upon the proposition raised by this assignment of error. According to the undisputed testimony it appears that the injury to the deceased was caused by the negligence of a co-employee unless it appeared that deceased was guilty of contributory negligence. The deceased and several others had congregated near the shaft in a level waiting for the cage to be lowered to elevate them to the surface. The cage at this time was suspended in the shaft several feet above the level in which they were stand-

ing. These rails were intended to guard the entrance to the shaft, and were so constructed that raising one raised the other on the opposite side of the shaft. A co-employee on the opposite side of the shaft from which the deceased was standing, who must have known that the deceased was at this point, and with full knowledge of the manner the guard-rails were constructed, raised them before the cage had descended to the level in which the deceased and his co-employees were standing, thus leaving the entrance to the shaft wholly unprotected. It was not necessary to raise the guard-rails until the cage had landed, nor was it customary to do so. These facts were established by undisputed testimony, and from them there can be but one conclusion, viz., that it was culpable and inexcusable negligence for the employee to raise the guard-rails at the time he did; so that it was wholly immaterial whether the defendant was negligent as charged in the first count or not. The important question for the jury to determine was whether or not the deceased was guilty of contributory negligence, and therefore the reception of the testimony of which the defendant complains was not prejudicial. The reception of incompetent testimony, which it affirmatively appears did not prejudice the party objecting thereto, does not constitute reversible error.

Mr. Justice Campbell concurs in the conclusion, that if the testimony objected to was incompetent, its reception was not prejudicial; but, without expressing his opinion as to the reasons given therefor by the Chief Justice, he thinks it may be on other grounds.

4. It is next contended by counsel for the appellant that the deceased had assumed all risk incident to the use of the guard-rails. While it is true, as a general proposition, that an employee impliedly

agrees to assume the risk of injury arising from existing conditions of which he has knowledge, or, by the exercise of reasonable care, could ascertain, we do not think that this rule is applicable to the facts in this case. The deceased unquestionably knew how the guard-rails were constructed. Assuming, but not deciding, that such construction was not such as reasonably prudent persons would employ, the deceased assumed the ordinary risk incident to the use for which they were designed, but not the risk resulting from their negligent operation, of which he had no notice. The guard-rails were raised before the cage had descended to the level in which the deceased and his co-employees were standing, and, not knowing that the rail on his side of the shaft was not in place, he approached it and was precipitated to the bottom. There is no evidence tending to prove that the deceased was aware that co-employees, or any one else, were in the habit of raising the guard-rail until the cage was in place and ready to receive the men for the purpose of carrying them to the surface. On the contrary, it appears that it was not customary to raise them until the cage had landed. It was not necessary to do so. The act of raising the guard-rails at a time when the cage was not in place was negligence, but that was a negligent operation of appliances which it does not appear he should have anticipated, and hence it cannot be said that he assumed a risk resulting from the negligent operation of an appliance by a co-employee of which he was unaware.

5. The next point made by counsel for appellant is, that deceased was guilty of contributory negligence. In addition to the facts already stated, the following are also pertinent in considering this question: The deceased was the nearest one to the shaft on his side. When the cage began to descend he ap-

proached the shaft, and turning around, looked towards his comrades, at the same time making a movement as though to lean upon the guard-rail on his side. At this moment it was raised, with the result that he lost his balance and was precipitated into the shaft.

It is settled by repeated decisions of this court that when the determination of the question of contributory negligence depends upon inferences which may be drawn from facts and circumstances of a character that different minds may honestly draw different conclusions therefrom, the question should be left to the jury. That was done in this case, and unless from the testimony we can say, as a matter of law, that one conclusion only could be drawn, namely: That the deceased was guilty of contributory negligence, the determination of the jury cannot be disturbed. The deceased was in plain view of the person whose culpable act in raising the guard-rails at the time he did left the entrance to the shaft unguarded. The deceased was not aware of this act. It was not the custom to raise these rails until the cage had descended to its place. It was not necessary to do so. As a reasonably prudent person, he was not called upon to anticipate that any one on the opposite side of the shaft, aware of his presence, would recklessly expose him to the danger incident to raising the guard-rails, an appliance expressly provided to prevent employees from falling into the shaft when the cage was not in place.—Shearman & Redfield on Negligence (5th ed.), § 92. The only act of the deceased which savors of negligence is the one of facing his comrades, and apparently attempting to lean upon the guard-rail, without noticing whether it was in place. It should have been, and except for the negligence of a co-employee, would have been. What a reasonably prudent per-

son, in the circumstances of deceased, with the knowledge he possessed, and the dangers to be anticipated, should have done under all the circumstances, were matters from which different minds could draw different conclusions; and it was, therefore, the peculiar province of the jury to determine the question of the alleged contributory negligence of the deceased.

6.    Counsel for appellant claim there is a variance between the allegations of the complaint and the facts proved.    This contention is clearly without merit.    The complaint alleged, in effect, that it was necessary for the deceased to approach the shaft along the level he was in in order to get on the cage which was being lowered to that level to raise him and his co-employees to the surface.    The variance claimed is, that the evidence disclosed that deceased approached the shaft for the purpose of leaning against the guard-rail, while waiting for the cage to descend.    While this may be true, it is not a variance.    He was there waiting for the cage to descend, and his movements just preceding the time when the cage did descend were but an incident to the purpose for which he approached the shaft.

7.    The defendant, as a bar to the action, pleaded that the plaintiff, for a good and valuable consideration, had released it from all claim which she might have against it for the death of her husband, and that such release was evidenced by a written instrument signed by her.    To this defense the plaintiff replied that she had not at any time received from the defendant any consideration of any kind or description in satisfaction of the death of her husband.    The issue thus presented was whether or not there was any consideration for the release pleaded.    That question was fairly submitted to the jury by an instruction, and as the issue of consideration was the only one with respect to the release upon which

the defendant relied, it cannot complain of instructions refused which were not pertinent, or, if so, were fully covered by the instructions given.  In this connection it is urged that plaintiff should not have been permitted to maintain her action without first rescinding the release and tendering back the consideration received.  Inasmuch as plaintiff pleaded there was no consideration for the alleged release, and the jury so found from testimony which at least is sufficient to support such finding, the question of rescission and tender is entirely eliminated, because there was neither a contract of release to rescind nor any consideration received by the plaintiff for the alleged release which she could tender back.

8.  The final and important question is the validity of the Co-employee Act, *supra*.  This is attacked upon the ground that the requirements of the constitution relative to the passage of bills were not observed in the passage of this act.  .A consideration of that question involves a finding of fact.  No such issue was made by the pleadings in the trial court.  The party seeking to question the validity of an act upon a ground which involves a question of fact must, in some appropriate way, raise it in the trial court and present the testimony upon which he relies to establish such fact.—*Marean v. Stanley,* 21 Colo. 43; *Peckham v. People,* 32 Colo. 140; *Anderson v. Grand Valley Irr. Dist.,* decided at January term last.

When thus presented, it may be preserved by bill of exceptions and reviewed by this court, but such question will not be considered on review in the first instance.

It is also urged that the act is unconstitutional in that it is in conflict with the fourteenth amendment to the federal constitution, because it deprives persons of their property without due process of law. The act in question renders the employer liable

for damages resulting from injuries to, or death of, an employee caused by the negligence of a co-employee in the same manner, and to the same extent, as if the negligence causing the injury or death was that of the employer. Counsel for defendant say that the imposition of this liability upon an employer without taking into consideration the nature of the business or the manner of carrying it on, works a great hardship and injustice upon employers and deprives them of a defense which the common law gives them without permitting them to be heard on the subject of their own wrong or negligence. It might be interesting to ascertain whether or not the rule of law which, generally speaking, exempts the employer from liability for injuries to employees caused by the negligence of co-employees, has descended to us as the ancient English common law, or whether it is a rule of comparatively recent origin, which, by some authors, it is claimed was first promulgated in this country. But that inquiry is immaterial to the question now under consideration. It has been the rule in this state. If it is the common-law rule, the act is not objectionable because it changes it. A person has no property or vested interest in any rule of the common law. That is one of the forms of municipal law, and is no more sacred than any other.—*Munn v. Illinois,* 94 U. S. 113 (134). That the act in question may be regarded by some as harsh or unjust because imposing too great a liability is not a matter which we can consider in determining its validity by constitutional tests.

Whether or not the employer is liable under the act in question must be determined by each particular case based on the provisions of that act. It does not deprive him of any defense to the liability thereby imposed which, under the established rules of law, could be regarded as sufficient, save and except his

own lack of negligence; but such a defense is not a constitutional right. The law itself, as a rule of conduct, may, unless constitutional limitations forbid, be changed at the will of the legislature. It has long been the settled law that the employer in many instances is liable to third persons in certain cases for the wrongful acts of his employees. This rule of law rests upon the proposition that he who acts through another acts through himself. One of the exceptions to this rule and its application is, that the employer is not liable to his employee for the negligence of a co-employee. This exception does not exist because of any statute, but because of a rule established by the courts. In 1877 the general assembly of this state passed an act which permitted certain persons to maintain an action for damages resulting from the death of another occasioned by the negligence of an employer. This was an innovation on the common-law rule, and gave a right of action which did not theretofore exist. The constitutionality of this act has never been questioned. The general assembly had the undoubted authority to give certain representatives of deceased a right of action against the person causing his death by negligence or wrongful act. The exercise of the discretion of that branch of the government to enact laws cannot be questioned so long as such laws do not conflict with either state or federal constitutional provisions. No such provisions have been called to our attention which limit the authority of the general assembly to abolish the rule heretofore existing which exempted the employer from liability to employees caused by the negligence of a co-employee and render him liable to his employees for the negligence of a co-employee.

For the purpose of providing for the safety and protection of employees in the service of a common employer, the law-making power has the undoubted

authority to abrogate the exception to the general rule of *respondeat superior* in favor of the employer, and make him liable to one of his employees for damages caused by the negligence of another employee while acting within the scope of his employment, regardless of the fact that such employees are fellow-servants.—*Dryburg v. Merker G. M. & M. Co.,* 55 Pac. (Utah) 367; *Mo. Pac. Ry. Co. v. Mackey,* 127 U. S. 205.

The judgment of the district court is affirmed.

Decision *en banc.*                    *Affirmed.*