## No. 11,342.

## TATARSKY *v.* SMITH.

Decided January 4, 1926.

Action for damages growing out of an automobile collision.   Judgment for defendant.

### *Affirmed.*

### *On Application for Supersedeas.*

1.   APPEAL AND ERROR—*Verdict—No Judgment.*   A writ of error lies from the Supreme Court to review only final judgments, and not verdicts of a jury which have not passed into final judgments.

2.   JURY—*Examination—Prejudicial Questions.*   In an action for damages growing out of an automobile collision, it is held that counsel had a right to ask prospective jurors if they were employed by, or interested in a certain insurance company.

3.        *Examination.*   Although counsel may have been supplied with the names, addresses, ages, occupations, and residences of jurors in the box, he was not restricted to this source of information in examining jurors on voir dire.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Butler, Judge.*

Mr. BENJAMIN F. NAPHEYS, Mr. RAY M. BEEBE, for plaintiff in error.

Mr. B. O. WHEELER, Mr. IVAN A. ALLEN, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

HYMAN TATARSKY, a minor, by Max Tatarsky (his

father) as next friend, brought this action against Jack Smith to recover from him damages for injuries sustained by the plaintiff Hyman as the result of a collision between the father's automobile, which the plaintiff was then driving, and the defendant's car on the Colfax-Larimer viaduct in the City of Denver. The defendant apparently deeming that there were two parties plaintiff, the father and the son, filed a counterclaim in his answer against both of them for damages which the defendant sustained as the result of the same collision. By direction of the court the jury was instructed to, and did, return a verdict against the defendant Smith on his counterclaim so far as it related to Max Tatarsky, whether on the ground that Max was not a party to the action or because the evidence did not make him liable for an injury that might have been inflicted by the minor son upon the defendant is not clear. The correctness of this directed verdict, however, not being questioned by the defendant, is not now before us. The jury, on forms submitted by the trial judge, returned four separate verdicts: (1) The directed verdict in favor of Max and against the defendant on his counterclaim against Max; (2) against plaintiff Hyman Tatarsky, the son, and for the defendant on the cause of action stated in the complaint; (3) for the defendant Smith against the minor Tatarsky on defendant's counterclaim in the sum of $1,250; (4) That in committing the wrong complained of by the defendant in his counterclaim the plaintiff Hyman Tatarsky, the minor, was guilty of negligence consisting of a reckless and willful disregard of the rights and safety of the defendant. After overruling plaintiff's motion to set aside verdicts numbered 2, 3 and 4, the court entered judgment that the plaintiff Hyman Tatarsky take nothing by his action and that defendant Smith recover from the plaintiff Hyman the sum of $1,250, the amount of damages assessed by the jury, together with his costs in that behalf laid out and expended, as found in verdict numbered 3. No exemplary damages were found in favor of the defendant and no judgment therefor was given. No body judgment,

so far as the record shows, was entered on verdict numbered 4 that the plaintiff in committing the wrong complained of by the defendant in his counterclaim was guilty of negligence consisting of a reckless and willful disregard of the rights and safety of the defendant.

The plaintiff Hyman Tatarsky is here with his writ of error to review the judgment rendered against him. On this application for a supersedeas his counsel argue only two propositions contained in his assignments of error: (a) That the special verdict authorizing a body judgment is the result of passion and prejudice and is not sustained by the evidence; (b) that on questions put to the jury on voir dire by counsel for defendant, the object was improperly to convey, and there was thereby communicated, to the jury the impression that an insurance company was involved in the litigation. These in their order.

1. We find nothing in the record upon which the first contention can be maintained. A writ of error from this court lies to review only final judgments of trial courts and not verdicts of a jury which have not passed into final judgments by order of the trial court. The jury returned a special verdict that Hyman Tatarsky recklessly disregarded the defendant's rights and his safety, but the court did not enter any judgment thereon. The only final judgment we find in the record is a compensatory judgment of $1,250, which the jury found was the amount of damage to the defendant's person and his car as the result of the collision. We need not, therefore, enter upon the question as to the meaning of "malice" or "reckless disregard of the defendant's rights and safety."

2. We find no merit in the other assignment. The record does not support it. On examination of the proposed jurors on voir dire defendant's counsel asked if any of the jurors in the box was employed by or interested in the International Indemnity Insurance Company. On objection by plaintiff's counsel the court ruled that the defendant had a right to inquire, without stating anything further about such relation, whether any juror was interested in or

employed by an indemnity insurance company, to enable him to exercise peremptory challenges, if not challenges for cause, and in connection with this ruling the court specifically said that counsel must refrain from making any comment or further reference to the matter, and counsel heeded the admonition, but should confine himself, as he did, solely to eliciting information as to the relation, if any, which the jurors sustained towards the indemnity company.

We are of the opinion that defendant's counsel did not abuse his privilege in this effort to ascertain if any of the jurors was disqualified to determine the controversy. Plaintiff's counsel, however, argue that both counsel were supplied with the names, addresses, ages, occupations and residences of each man in the box which gave full information and, therefore, there was no reason for asking the questions which he did. Counsel was not restricted to this source of information, but it was his privilege to ask on voir dire such questions as he propounded. It is further said that reference was again made to an insurance company during examination of the defendant himself when his counsel was endeavoring to elicit from him the extent of the alleged damages to his car. The defendant in answer to a question by his counsel said that he consulted an employee of an automobile company for an estimate of the cost of repairing his damaged car which was given and an itemized statement thereof furnished. Defendant's counsel then asked him if he had that list with him to which the answer was that he did not. Counsel then asked where it was and the answer was that the indemnity company has got it in their hands. Plaintiff's counsel objected to the answer and asked that it be stricken and the court struck the answer from the record and directed the jury to disregard it.

The first part of the contention, that the examination by defendant's counsel had for its object to prejudice the jury by leading its members to believe that any damages that defendant suffered would be paid not by the plaintiff but by an insurance company, is not sustained by the record. The case of *Coe v. Van Why,* 33 Colo. 315, 80 Pac. 894, 3

Ann. Cas. 552, is relied upon by the plaintiff, but it is not in point. The objectionable reference there to an insurance company, that was made for the obvious purpose of prejudicing the jury, was in the opening argument of counsel for the plaintiff and not upon voir dire. Counsel there said that it was a matter of common knowledge that employers and mining companies in the district in question protect themselves against liability on account of accidents by taking out insurance in insurance companies against such liability. This court in commenting upon this reference said there was not a word of evidence in the record of any such custom. Although the trial court instructed the jury that such statement by counsel must not be considered by them for any purpose, and the liability, if any, of the defendants depended not upon habit or custom of mining companies, but upon facts proven in the case and upon nothing else, we held upon review that the statement, made as it was by counsel in his argument to the jury after it had been impanelled and sworn, had for its sole purpose to create a prejudice against the defendant and the judgment for plaintiff was reversed. In the instant case the reference to an insurance company by defendant's counsel was not a statement of any fact but an inquiry of the members of the jury as to their qualifications to try the case. In the later case of *Vindicator Con. G. M. Co. v. Firstbrook,* 36 Colo. 498, 86 Pac. 313, 10 Ann. Cas. 1108, we held that it was not error to permit counsel to examine jurors on voir dire as to their connection with an insurance company so as to ascertain their interest, if any, if the examination stopped there and did not violate the rule as stated in the Van Why case. In the Firstbrook case we expressly distinguished it from the Van Why case and said the latter case, as applied to its facts, stated a sound doctrine. In *Independence Coffee & Spice Co. v. Kalkman,* 61 Colo. 98, 156 Pac. 135, we held that a plaintiff is entitled to inquire if any member of the panel has an interest in the corporation which has, or is supposed to have, indemnified the defendant against the liability asserted because, if defendant

was indemnified by some insurance company, the plaintiff had a right to know if any prospective juror was interested in or employed by it, referring with approval to the Firstbrook case. We think there is a well defined and substantial distinction between the Van Why case and the Firstbrook and Kalkman cases and that the ruling made by the trial court in this case is authorized by the two later cases.

Perceiving no prejudicial error in the record of which the plaintiff in error may complain, the application for supersedeas is denied and the judgment affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE SHEAFOR concur.