## No. 11,745.

### BOLLES *v.* KINTON, ET AL.

Decided January 3, 1928.

Action against physicians for negligent treatment. Judgment for plaintiff.

## *Affirmed.*

1. TORTS—*Joint Tort-Feasors.* In an action against two physicians for negligent treatment, on a review of the record it is held that there was a joint employment, service and tort of defendants.

2. PHYSICIANS AND SURGEONS—*Cessation of Service.* A physician can not relieve himself of responsibility by simply staying away and abandoning a case without notice to his patient.

3. TORTS—*Joint Tort-Feasors—Liability.* When two persons owe the same duty and their acts tend to the same breach of duty, the wrong may be regarded as joint and both held liable.

4. PHYSICIANS AND SURGEONS—*Joint Liability.* Where two physicians were employed together by a patient and diagnosed and treated the case together without discharge or withdrawal of either, both will be regarded as responsible for any negligent treatment.

5. *Negligence.* In an action against physicians for negligent treatment, evidence reviewed and held sufficient to justify a verdict for plaintiff.

6. *Duties.* A physician is required to make a diagnosis and give treatments according to the practice of the school of medicine to which he belongs, and to hold him responsible for failure in these

respects it must be shown that he did not use the ordinary skill and care of his school. In the instant case, defendants held to have so failed.

7. VERDICT—*Excessive.* A verdict for $6,250 as damages for negligent medical treatment, held not excessive under the facts disclosed.

8. APPEAL AND ERROR—*Evidence.* Parties may not assign error on the admission of evidence which they themselves introduced.

9.     *Instructions—Faulty Requests.* One who tenders an instruction which is faulty cannot complain if the court does not correct but refuses to give it.

10. HUSBAND AND WIFE—*Disability of Wife—Damages.* A married woman has the right to recover for her inability to labor, caused by the negligence of a third party, independently of her husband's right to recover for the loss of her services.

11. JURY—*Examination.* In an action for damages for negligent medical treatment, counsel had a right to ask prospective jurors whether any of them were interested in a certain insurance company, where the examination was limited to that simple question on this point.

*Error to the District Court of the City and County of Denver, Hon. J. C. Starkweather, Judge.*

Mr. F. T. JOHNSON, for plaintiff in error.

Mr. L. D. HUNT, Mr. S. R. OWENS, for defendants in error.

*En Banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

MRS. Kinton had a verdict and judgment against Doctors Bolles and Starks, osteopathic physicians, jointly, for $6,250 for negligently treating her broken hip.

The defendants appear separately, but since their arguments on the merits are substantially the same we may treat them together,

Doctor Bolles claims that there was no joint tort. It seems to us clear that there was a joint tort if any. Doctor Bolles was employed, she immediately called in Doctor Starks, who was her son-in-law and lived and officed with her; plaintiff accepted the services of both and they together made diagnosis and they treated her; several times they treated her together. Doctor Bolles says she ceased her connection with the case after a few visits, but she did not so notify plaintiff. She continued to consult and advise with Doctor Starks about the case and a bill for all the services was sent in her name on her bill head. There is in this evidence more than room for the conclusion that the employment was joint and that the services were jointly performed. A physician cannot discharge a case and relieve himself of responsibility for it by simply staying away without notice to the patient. *Ballou v. Prescott,* 64 Me. 305; *Williams v. Gilman,* 71 Me. 21; *Gerken v. Plimpton,* 70 N. Y. Supp. 793; *Gillette v. Tucker,* 67 O. St. 106, 123, 65 N. E. 865, 93 Am. St. Rep. 639, citing the Maine cases; *Mucci v. Houghton,* 89 Ia. 608, 611, 57 N. W. 305.

When two person owe the same duty and their acts tend to the same breach of duty, the wrong may be regarded as joint, and both may be held liable. *Hawkesworth v. Thompson,* 98 Mass. 77, 93 Am. Dec. 137; *Economy L. & P. Co. v. Hiller,* 203 Ill. 518, 520, 68 N. E. 72. Here the defendants owed the same duty, i. e., ordinary skill and care in diagnosis and treatment. Their primary error, if any, was in diagnosis, and wrong treatment resulted. This treatment was made by them partly together, a little by Doctor Bolles and mostly by Doctor Starks, but since, as shown above, they were employed by the patient together, made diagnosis together and treated together, without withdrawal by or discharge of either, they must both be regarded as responsible for negligence if there was any.

It is insisted that there was no negligence, but it seems clear that there was enough evidence to go to the jury on that point.

The essential facts, either undisputed or so shown as to justify the jury in finding them, are that plaintiff fell, severely bruised her left hip and broke the neck of the femur. Doctor Bolles was called, sent for Doctor Starks, and said the bone might be broken, and they considered the X-ray. They came the next day, made a diagnosis of mere contusion, decided the X-ray unnecessary and thenceforward treated the injury accordingly, although the leg was perceptibly shortened and the foot everted. They deny shortening and eversion, but there is both direct and circumstantial evidence that both existed and that they both (Doctor Starks frequently as the case progressed) saw both these symptoms, that Doctor Starks frequently pulled the leg to avoid shortening, which could not occur without fracture or dislocation, yet they continued treatment as if there were no fracture. Shortening of the leg and eversion of the foot are strong if not decisive indications of fracture and so regarded by osteopathic doctors as both the defendants testified.

Notwithstanding these conditions the defendants continued the treatment as for mere contusion for about seven weeks, when other practitioners were employed, the defendants discharged, X-ray photographs taken, the break discovered and an operation performed of bone grafting to unite the broken ends, which from the long delay in setting had been absorbed and become too far apart for ordinary setting. If the jury believed this they had to give a verdict for plaintiff. Of all this the only material point in question is whether there was shortening and eversion, upon which we must take the jury's answer.

It is claimed, however, that a physician is required to make diagnosis and give treatment according to the practice of the school of medicine to which he belongs, and that to hold him responsible in these respects it must be

shown that he did not use the ordinary skill and care of his school. This is true. It is also claimed that there is no such showing here. This is a mistake, because the defendants themselves testify that the osteopathic diagnosis regards shortening and eversion as strong evidence of fracture and that their practice calls for X-ray in case of doubt. This, with the evidence of these symptoms, stated above, makes complete the evidence that defendants did not use the ordinary methods of their own school in diagnosis or did not heed the manifest indications regarded by that school as of weighty import, which should at least have suggested making the matter certain by X-ray or other final test.

It is insisted that no osteopathist has testified that what the defendants did or failed to do as osteopathic physicians was wrong from an osteopathic standpoint. This is answered by what we have just said.

It is claimed that the damages were excessive; but the evidence is of excruciating pain for a long time, great expense and further pain in the bone grafting and a probability of partial crippling for life, most of which prompt setting of the bone would have avoided. We cannot say that the sum of $6,250 exceeds a reasonable compensation for this.

The defendants on cross-examination introduced a bill, sent to the attorneys for plaintiff, by the witness Doctor VanPatten, who performed the bone-grafting operation. It stated $1,000, unitemized, as the amount due for services in the operation to him and to two assistants, Doctors Winemiller and Collins. It stated nothing about services by any one else. Doctor VanPatten testified, however, that he expected, out of the $1,000, to pay Doctor Spears something for some assistance which he gave and to pay for the X-ray work, and a Doctor Wunsch testified that he was to be paid by Doctor VanPatten something for taking X-ray photographs. The bill is unpaid. C. L. § 4566 provides that "if any person holding a license to practice medicine * * * issued by the

state board of medical examiners  *  *  *  shall make a joint or lump or gross charge or present a bill or request a payment for a joint or lump or gross account for services rendered by him as  *  *  *  surgeon  *  *  * without itemizing the amount charged or requested for the services rendered by each physician  *  *  *  whose services are included in such joint or lump or gross charge or bill  *  *  *  such physician  *  *  *  shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by'' fine or imprisonment.

The plaintiffs in error say that Doctor VanPatten's bill violates this statute because it does not specify Doctor Spears and Doctor Wunsch's charges; and claim that since the bill presented violates the statute no part of it could be made the basis of any damages to be recovered by plaintiff. The only way, however, by which that conclusion can be reached is to say that by reason of the unlawful form of the bill the plaintiff is no longer liable for the services of her doctors. We seriously doubt whether such proposition is true, but we are relieved from deciding the question because the defendants introduced the bill in evidence and cannot therefore assign error for its admission, and the requested instruction on this point contained advice to the jury as to other violations of the same section concerning which there was no evidence:  e. g., the statute forbids a physician to give any one anything for bringing him the case, and there is no evidence that Doctor VanPatten did this. It would have been error, therefore, to give the whole instruction, and one who tenders an instruction partly faulty cannot complain if the court does not correct, but refuses it.

It is claimed that the jury should have been instructed that the plaintiff could not recover damages for loss of her ability to act as housewife because her services as such belong to her husband. This court has held or approved the proposition that a married woman has

the right to recover for her inability to labor independently of her husband's right to recover for the loss of her time.    She does not recover for her lost time which belongs to her husband but for the inconvenience to herself.    This seems to have been fairly left to the jury with no exception taken and no further instruction on that point requested.    *C. S. & I. Ry. Co. v. Nichols,* 41 Colo. 272, 276, 92 Pac. 691, 20 L. R. A. (N. S.) 215.

The plaintiff's counsel was permitted to ask the jurymen on voir dire whether any of them were interested in a certain insurance company.    This was proper.    The plaintiff had a right to ascertain the fact as to their interest.    True, counsel may have had a desire to let the jury know that defendants carried liability insurance, but we do not see how he or the court could have treated the matter more fairly.    All argument was in chambers and the court restricted the examination on this point to the one simple question.    *Vindicator C. G. M. Co. v. Firstbrook,* 36 Colo. 498, 86 Pac. 313, 10 Ann. Cas. 1108; *Cripple Creek Mining Co. v. Brabant,* 37 Colo. 423, 426, 87 Pac. 794; *Independence C. & S. Co. v. Kalkman,* 61 Colo. 98, 156 Pac. 135; *Tatarsky v. Smith,* 78 Colo. 491, 494, 495, 242 Pac. 971.

Judgment affirmed.

MR. JUSTICE CAMPBELL and MR. JUSTICE ADAMS dissent.